Robert C. Schubert (S.B.N. 62684)
Willem F. Jonckheer (S.B.N. 178748)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law

Christian Levis (*pro hac vice* forthcoming)
Amanda Fiorilla (*pro hac vice* forthcoming)
Henry Kusjanovic (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
hkusjanovic@lowey.com

Anthony M. Christina (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
achristina@lowey.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MCCOY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALPHABET INC., a Delaware corporation, and GOOGLE LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert McCoy ("Plaintiff"), individually and on behalf of all others similarly situated, asserts the following against Defendants Alphabet Inc. ("Alphabet") and Google LLC (collectively "Google" or "Defendants"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## SUMMARY OF ALLEGATIONS

1. This action arises from Defendants' monitoring, collection, and misuse of Plaintiff's and Class members' sensitive personal data without obtaining meaningful consent or providing adequate disclosures as required by law.

2. Google maintains a dominant position in the smartphone operating systems ("OS") market. Google controls over 75% of the OS market, which powers a majority of smartphones across the globe. Over 2.5 billion consumers use a smartphone that is powered by Google's Android OS (collectively "Android Smartphones").

3. Google has abused its market position to gain an unfair advantage against its competitors in other industries, including social media platforms and applications such as TikTok, Facebook, and Instagram.

4. Specifically, Google has relied on an internal secret program called "Android Lockbox." This program allows Google employees to spy on Android Smartphone users. Through Android Lockbox, Google employees have been able to monitor and collect sensitive personal data on users when they interact with non-Google applications (also referred to as "apps") on their smartphones.

5. In doing so, Google has foregone obtaining meaningful consent from consumers, like Plaintiff and Class members, and has chosen to secretively monitor and collect users' sensitive personal data for this undisclosed purpose.

6. Google's actions are an invasion of Plaintiff's and Class members' privacy interests, as established through California's privacy laws and California's Constitution. In addition, Google's actions constitute a breach of contract and implied contract, as well as violations of the common law and several state laws.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because more than two-thirds of putative class members are citizens of a state different than Defendants.

8.      This Court has general personal jurisdiction over Defendants because their principal place of business is in California. Additionally, Defendants are subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this State.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District.  Furthermore, Defendants Alphabet Inc. and Google LLC are headquartered in this District and subject to personal jurisdiction in this District.

10.      **Intra-district Assignment (L.R. 3-2(c) and (e) and 3-5(b))**:  This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Santa Clara County. Pursuant to L.R. 3-2(e), all civil actions that arise in Santa Clara County shall be assigned to the Northern District of California San Jose Division.

## PARTIES

### A.      Plaintiff

11.      Plaintiff Robert McCoy ("Plaintiff") is a natural person and citizen of the State of New York and a resident of Queens County. Plaintiff McCoy is the owner of a Google Pixel XL Android smartphone, which runs on Android OS. Plaintiff McCoy uses apps that Google targets through its abusive practices, such as TikTok.

### B.      Defendant

12.      Defendant Alphabet Inc. ("Alphabet") is a Delaware corporation, organized and existing under the laws of the State of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043-1351. Alphabet is the successor issuer

to, and parent holding company of Google LLC. Alphabet owns all the equity interest in Google LLC. The reorganization of Google LLC into Alphabet was completed in 2015.

13.     Defendant Google LLC is a limited liability company existing under the laws of the State of Delaware, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.[1]

## FACTUAL BACKGROUND

### I.     The History of Google & Android

14.     Google prides itself on its official motto "don't be evil."

15.     Beginning in August of 1998, Google Inc. was officially formed by Larry Page and Sergey Brin. Since its founding, Google has become a leading technology company. Arguably no other technology company is more responsible for shaping the modern internet than Google.

16.     While Google initially started as an internet search engine, Google has now diversified itself to include a vast array of business units. In 2002, Google launched "Google News," a news aggregation service. Two years later, Google developed "Gmail," a popular email platform. In 2005, "Google Maps" was launched, and dozens of other services, products, and applications have followed since then.

17.     Google has also made a significant amount of acquisitions to further diversify its business. To date, Google has acquired over two hundred companies. Prominent acquisitions include Google's purchase of video platform YouTube in 2006 for $1.65 billion.

18.     Just prior to this acquisition, Google quietly purchased Android, Inc. ("Android") in 2005 for $50 million. In the early days, Android's operating system was used to power several popular smartphones, including Motorola's "Droid," Samsung's "Galaxy," and HTC's "Dream" and "Nexus."

---

[1] During the 2015 reorganization, certain of Google LLC's business segments were spun off and separated into independent entities under the ownership of Alphabet. At various times during the Class Period, certain of the business segments re-merged with Google LLC under one corporate structure. Accordingly, Alphabet and Google LLC both have been named as Defendants in order to ensure all corporate entities who may be found liable for any portion of the alleged wrongdoing are part of this Complaint.

19.     In 2011, Google took steps to acquire Motorola Mobility for $12.5 billion, which marked Google's first attempt to develop smartphone hardware in addition to a mobile operating system. Google eventually sold Motorola Mobility to Lenovo for $2.91 billion. Google would later go on to internally design the "Pixel" and "Pixel XL" (which Plaintiff McCoy owns) smartphones in October of 2016, both running on Android OS.

20.     Android would soon become one of Google's most successful acquisitions, as Android's mobile operating system is now the most popular smartphone operating system in the world.

21.     For example, as of November 2017, it was estimated that 75.9% of all smartphones run on Android OS. By 2019, Google reported at the I/O developer conference that, at the time, there were currently 2.5 billion active devices running Android OS.

22.     Google abused its dominant market position to unlawfully monitor, collect, and disclose Android Smartphone users' (including Plaintiff's and Class members') sensitive personal data, without obtaining their consent in order to obtain an unfair advantage over its competitors.

## II.     Google Abuses Android OS to Obtain a Competitive Advantage

23.     On July 23, 2020, a bombshell report by *The Information* revealed for the first time that Google secretly monitors, collects, and otherwise misuses Android Smartphone users' sensitive personal data.

24.     Google does so through an undisclosed program called "Android Lockbox." The program works through Google Mobile Services and allows Google employees to spy on how Android Smartphone users interact with non-Google apps.

25.     For example, Google is able to collect data on when and how often an Android Smartphone user opens and runs non-Google apps and the amount of time spent in non-Google apps.

26.     Google has admitted that it has access to Android Smartphone users' sensitive personal data. A Google spokesperson explained to *The Verge* that "[s]ince 2014, the Android App Usage Data API has been used by Google and Android developers who have been authorized by Android OEMs or users to access basic data about app usage—such as how often apps are opened—

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

to analyze and improve services."

27.     However, despite Google's claim that its practices are "authorized," this is not the case. Google does not disclose, nor seek consent, to monitor, collect, or use Android Smartphone users' sensitive personal data while using non-Google apps.

28.     Nor does Google collect Android Smartphone users' sensitive personal data to "analyze and improve services." Rather, Google uses this information to obtain an unfair competitive advantage over its rivals.

29.     For example, video platform YouTube, which is owned by Google, uses Android Lockbox to monitor and collect valuable and sensitive personal data to obtain an unfair advantage over rival video platform TikTok in its pursuit of developing a competitor app in India.

30.     Similarly, in the United States, Google's true purpose in using Android Lockbox is to monitor and collect Android Smartphone users' sensitive personal data in its efforts to develop apps to compete with its top social media platform competitors including TikTok, Facebook, and Instagram. According to *The Information*, inside sources have confirmed that Google monitors and collects Android Smartphone users' sensitive personal data to unfairly compete against TikTok and develop a competing video platform app called "Shorts."

31.     Plaintiff McCoy has TikTok installed on his Pixel XL Android device and regularly uses TikTok. Plaintiff McCoy's sensitive personal data, including his data related to TikTok, was unlawful and secretively collected by Google without his consent.

**III.     Google Does Not Obtain User Consent to Collect Plaintiff's and Class Members Data**

32.     In Google's pursuit of obtaining an unfair economic advantage against its rivals, including TikTok, Google failed to obtain Android Smartphone users' consent to monitor, collect, or use their sensitive personal data.

33.     According to *The Information*, Google purportedly claims to obtain "consent" during the Android setup process. However, users are only vaguely told that Google will collect personal data "to offer a more personalized experience."

34.     Google does not indicate what "a more personalized experience" even entails for

Android Smartphone users. Plaintiff and Class members relied upon this statement when setting up their Android Smartphones thinking that their Android Smartphones would become more "personalized" when in fact Google actually secretly pilfered their sensitive personal data without their consent.

35.    Never is it disclosed that Google actually monitors, collects, and uses sensitive personal data when Android Smartphone users use non-Google apps.

36.    Furthermore, Google's actual purpose in obtaining this information is not to provide a "personalized experience," as Google claims. Rather, Google's true purpose of obtaining Plaintiff's and Class members' sensitive personal data is to obtain lucrative behind the scenes technical insight that it can use to develop competing apps against its competitors.

37.    Nor does Google's Privacy Policy disclose that (1) Google is monitoring and collecting sensitive personal data while Android Smartphone users interact with non-Google apps; nor (2) that Google, in general, collects sensitive personal data to obtain an unfair economic advantage.

38.    Google's Privacy Policy states that it "collect[s] information to provide better services to all our users."[2] As described throughout the Complaint, Google did not collect this information to "provide better services," but rather collected this data in order to compete with rivals and develop competing products.

39.    Google explains that it "collect[s] this information when a Google service on your device contacts our servers – for example, when you install an app from the Play Store or when a service checks for automatic updates." Furthermore, it explains "[i]f you're using an Android device with Google apps, your device periodically contacts Google servers to provide information about your device and connection to our services. This information includes things like your device type, carrier name, crash reports, and which apps you've installed."

40.    Nowhere does Google explain, nor obtain consent, to collect Android Smartphone users' data while users interact with non-Google apps, such as the frequency that non-Google apps

---

[2] *Privacy Policy*, GOOGLE (updated Dec. 19, 2019) (archived by Plaintiff's counsel).

are used or the duration of time a user spends on non-Google apps. Google only states that it may collect information about "activity on third-party sites and apps that use our services."

41.     This type of vague and ambiguous purported disclosure is deceptively misleading and insufficient for Plaintiff and Class members to understand, let alone consent to what Google is actually doing—spying on Android Smartphone users.

42.     Without obtaining meaningful consent, Google has chosen to secretively obtain Android Smartphone users' sensitive personal data and exploit this information for its own personal benefit.

### IV.   Android Smartphone Users Have a Reasonable Expectation of Privacy

43.     Plaintiff and Class members have a reasonable expectation of privacy in their sensitive personal data, which Google monitored, collected, and misused. This expectation of privacy is deeply enshrined in California's Constitution.

44.     Article I, Section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, *and privacy*."  Art. I., Sec. 1, Cal. Const (emphasis added).

45.     The phrase "*and privacy*" was added in 1972 after voters approved a legislative constitutional amendment designated as Proposition 11.  Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating in relevant part:

> The right of privacy is the right to be left alone . . . It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us.
>
> **Fundamental to our privacy is the ability to control circulation of personal information.** This is essential to social relationships and personal freedom. The proliferation of government and business records over which we have no control limits our ability to control our personal lives. Often we do not know that these records even exist and we are certainly unable to determine who has access to them.[3]

---

[3] Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) at 27.

(emphasis added).

46.     Consistent with this language, an abundance of studies examining the collection of consumers' personal data confirms that the surreptitious taking of sensitive personal data from millions of individuals, as Google has done here, violates expectations of privacy that have been established as general social norms.

47.     Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

48.     For example, a recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing their data and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[4]

49.     Google has failed to obtain adequate consent in connection with its data collection practices, which constitutes a violation of Plaintiff's and class members' privacy interests, including those explicitly enshrined in the California Constitution.

**V.     Google Has a History of Privacy Abuse & Antitrust Violations**

50.     This is not the first time Google has abused its dominant market position, including in the OS smartphone market to obtain an unfair competitive advantage. Over the last decade, Google has been investigated by dozens of regulators across several countries, resulting in billions of dollars to U.S. and foreign regulators in the form of penalties and settlements.

51.     For example, in 2010, nine countries concluded that Google violated privacy laws by collecting personal information, including emails, passwords, and other personal data, in connection with Google's deployment of Google's "Street View" program. U.S regulators also investigated this conduct, which ultimately resulted in 38 state attorneys general fining Google $7 million for its unlawful and deceptive collection of consumer data. The following year the Federal

---

[4] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

Communications Commission also fined Google $25,000 for obstructing its investigation into Google's Street View program.

52.     In 2012, the Federal Trade Commission began an investigation into Google's violations of its own privacy promises consumers with respect to its social network, "Google Buzz." As part of a settlement, Google agreed to stop misrepresenting the extent of control users had concerning the collection of their personal information. In August 2012, Google was fined $22.5 million for violating the terms of the settlement.

53.     The following year, Google paid $17 million to 37 states and the District of Columbia as compensation for circumventing the privacy setting of Apple Safari web browser users.

54.     In 2018, Google was hit with a "record-breaking" $5 billion fine by European Union regulators for breaking antitrust laws in connection with its Android services. The European Commission found that Google unlawfully bundled its other services, such as its search engine and "Chrome" apps into its OS system, among other things. As a result, Google was required to discontinue its practice of preinstalling Chrome and other Google apps on smartphones.

55.     On January 21, 2019, the French administrative regulatory body, *Commission nationale de l'informatique et des libertés* ("CNIL") fined Google $57 million for lack of transparency and failure to provide a reasonable basis for processing its users' personal data. The CNIL observed that Google failed to obtain valid user consent because users were not "sufficiently informed" and their disclosures were not "specific" nor "unambiguous" as required by Europe's General Data Protection Regulation.

56.     On May 27, 2020, Google was sued by the State of Arizona for deceptive and unfair business practices in connection with how it obtains users' location data, which it exploits to obtain an unfair advantage in its advertising business. *See State of Arizona ex rel Mark Brnovich, Attorney General v. Google LLC,* Case No. CV2020-006219 (Arizona Super. Ct. Maricopa Cty.).

57.     It is therefore not surprising, that Google has once again taken advantage of its dominant market position to unlawfully collect sensitive personal data—without consent—in furtherance of Google's own agenda, i.e., to gain an unfair economic advantage against its rivals.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All Android Smartphone users from at least as early as January 1, 2014 through the present (the "Class Period").[5]

59.     Excluded from each Class are: (1) any Judge or Magistrate Judge presiding over this action and any members of their staff and families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parent has a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

60.     **Ascertainability:** Membership of the Class is defined based on objective criteria, and individual members will be identifiable from Defendants' records.

61.     **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of millions of individuals, and the members can be identified through Defendants' records.

62.     **Predominant Common Questions:** The Class' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

    a.     Whether Defendants violated Plaintiff's and Class members' privacy rights;

    b.     Whether Defendants' acts and practices complained of herein amount to egregious breaches of social norms;

    c.     Whether Defendants and Plaintiff formed implied contracts;

    d.     Whether Defendants breached implied contracts with Plaintiff and the Class

---

[5] Plaintiff has defined the Class based on currently available information and hereby reserves the right to amend the definition of the Class, including, without limitation, the Class Period.

members;

       e.     Whether Defendants' conduct was unfair;

       f.     Whether Defendants' conduct was fraudulent;

       g.     Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement; and,

       h.     Whether Plaintiff and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

63.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the proposed Class. Defendants' conduct that gave rise to Plaintiff's claims and the members of the Class is the same for all members of the Class.

64.    **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including privacy violations. Plaintiff has no interest that is antagonistic to those of the Class, and Defendants have no defenses unique to any Plaintiff.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

65.    **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

66.    Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

67.     California's substantive laws apply to every member of the Class, regardless of where in the United States the Class member resides.

68.     Defendants' Terms of Service states "these terms [are] important because, by using our services, you're agreeing to these terms."[6] Defendants' Terms of Service make clear under the subheading "Settling disputes, governing law, and courts" that "California law will govern all disputes arising out of or relating to these terms . . . These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts."[7]

69.     By choosing California law for the resolution of disputes in the agreement, Google concedes that it is appropriate for this Court to apply California law to the instant dispute.

70.     Further, California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV § 1 of the U.S. Constitution. California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.

71.     Defendants' United States headquarters and principal place of business is located in California. Defendants also own property and conduct substantial business in California, and therefore California has an interest in regulating Defendants' conduct under its laws. Defendants' decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible.

72.     California is also the state from which Defendants' alleged misconduct emanated. This conduct similarly injured and affected Plaintiff and all other Class members.

---

[6] *Terms of Service*, GOOGLE, (last updated March 31, 2020), https://policies.google.com/terms?hl=en-US.

[7]     *Id.*

73.     The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Common Law Invasion of Privacy – Intrusion Upon Seclusion
### (On Behalf of Plaintiff and the Class)

74.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

75.     Plaintiff asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

76.     Defendants intruded upon Plaintiff's and Class members' seclusion by (1) collecting, retaining and monitoring their Android Activity in which they had a reasonable expectation of privacy; and (2) in a manner that was highly offensive to Plaintiff and Class members, would be highly offensive to a reasonable person, and was an egregious violation of social norms.

77.     Defendants' conduct violated Plaintiff's and Class members' interests by monitoring and disseminating sensitive and confidential personal data concerning their electronic activity and other affairs (i.e., their informational privacy rights), as well as their interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference (i.e., their autonomy privacy rights).

78.     The surreptitious monitoring, transmission, and disclosure of personal, confidential, and private information from millions of individuals was highly offensive because it violated expectations of privacy that have been established by general social norms. Privacy polls and studies consistently show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is shared.

79.     Defendants intentionally engage in the misconduct alleged herein for its own

financial benefit.

80.     As a result of Defendants' actions, Plaintiff and Class members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

81.     Unwanted monitoring and dissemination of sensitive personal data in violation of the law or social norms is actionable under California law.

82.     Plaintiff and Class members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to just compensation.

83.     Plaintiff and Class members are entitled to appropriate relief, including compensatory damages for the harm to their privacy and dignitary interests, loss of valuable rights and protections, heightened risk of future invasions of privacy, and mental and emotional distress.

84.     Plaintiff and Class members are entitled to an order requiring Defendants to disgorge profits or other benefits that Defendants acquired as a result of its invasions of privacy.

85.     Plaintiff and Class members are entitled to punitive damages resulting from the malicious, willful and intentional nature of Defendants' actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

86.     Plaintiff also seeks such other relief as the Court may deem just and proper.

### SECOND CLAIM FOR RELIEF
**Invasion of Privacy**
**Art. I, Sec 1 of the California Constitution**
**(On Behalf of Plaintiff and the Class)**

87.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

88.     Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Art. I, § 1, Cal. Const.

89.     The right to privacy in California's constitution creates a private right of action

1   against private and government entities.

2   90.   To state a claim for invasion of privacy under the California Constitution, a plaintiff

3   must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and

4   (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an

5   egregious breach of the social norms.

6   91.   Defendants violated Plaintiff's and Class members' constitutional right to privacy by

7   collecting, retaining and disseminating (1) sensitive personal data in which they had a legally

8   protected privacy interest, (2) sensitive personal data in which they had a reasonable expectation of

9   privacy, (3) in a manner that was highly offensive to Plaintiff and Class members, would be highly

10   offensive to a reasonable person, and was in egregious violation of social norms.

11   92.   Defendants have intruded upon Plaintiff's and Class members' legally protected

12   privacy interests, including, *inter alia*: (i) interests in precluding the dissemination or misuse of

13   sensitive and confidential personal data ("informational privacy"); (ii) interests in making intimate

14   personal decisions or conducting personal activities without observation, intrusion, or interference

15   ("autonomy privacy").

16   93.   The confidential and sensitive data, which Defendants monitored, transmitted, and

17   disclosed without Plaintiff's and Class members' authorization and/or consent included, *inter alia*,

18   how long Plaintiff's and Class members' use certain apps and how often apps were open. Plaintiff

19   and Class members had a legally protected informational privacy interest in the confidential and

20   sensitive information as well as an autonomy privacy interest in conducting their personal activities

21   without observation, intrusion, or interference.

22   94.   Defendants' actions constituted a serious invasion of privacy that would be highly

23   offensive to a reasonable person in that: (i) the invasion occurred within a zone of privacy protected

24   by the California Constitution, namely the collection and stockpiling of unnecessary information by

25   businesses without consent, and the misuse of information gathered for an improper purpose; (ii)

26   the invasion deprived Plaintiff and Class members of the ability to control the circulation of their

27   personal information, which is considered fundamental to the right to privacy.

28

95.     Plaintiff and Class Members had a reasonable expectation of privacy in that: (i) Defendants' invasion of privacy occurred as a result of Defendants secretively monitoring, collecting, and transmitting sensitive personal data; (ii) Plaintiff and Class members did not consent or otherwise authorize Defendants to monitor, collect, or transmit their sensitive personal data; (iii) Plaintiff and Class members could not reasonably expect Defendants would commit acts in violation of laws protecting privacy.

96.     As a result of Defendants' actions, Plaintiff and Class members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to just compensation.

97.     Plaintiff and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests as well as disgorgement of profits made by Defendants as a result of its intrusions upon Plaintiff's and Class members' privacy.

**THIRD CLAIM FOR RELIEF**
**Violation of Cal. Civ. Code § 1709**
**(On Behalf of Plaintiff and the Class)**

98.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

99.     California Civil Code § 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." A defendant violates §1709 if (i) it had a duty to disclose a material fact to the plaintiff; (ii) it intentionally concealed that fact with intent to defraud; (iii) plaintiff was unaware of that fact (and would have acted differently if he were aware), and (iv) plaintiff sustained some damage as a result.

100.    California Civil Code § 1710 defines "deceit" as "1. [t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. [t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. [t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts

which are likely to mislead for want of communication of that fact; or, 4. [a] promise, made without any intention of performing it."

101.   Defendants engaged in various acts of deceit. Defendants either suggested that certain facts are true which it knew were not true or which it had no reasonable grounds to believe were true. For example, Defendants claimed that their collection of Plaintiff's and Class members' data is "to provide better services."[8] Additionally, when users setup an Android phone, Defendants claim to collect Plaintiff's and Class members' data to provide "a more personalized experience."

102.   Both statements are objectively false: neither of these are the real purpose of Defendants' data collection practices. Despite Defendants' claim, Defendants collect Plaintiff's and Class members' sensitive personal data to gain an unfair competitive edge over its competitors, such as TikTok, Instagram, and Facebook.

103.   Furthermore, Defendants suppress facts and provides other facts that are likely to mislead. Nowhere in Defendants' Privacy Policy is it ever disclosed the full extent of Defendants data collection practices, including the frequency in which Plaintiff and Class members open non-Google apps and the duration of time spent on non-Google apps. By failing to disclose these material facts, Plaintiff and Class members were deceived.

104.   Defendants willfully engaged in these acts of deceit with intent to induce Plaintiff and Class members to alter their position to their injury or risk, namely by turning over their sensitive personal data to Defendants under false pretenses.

105.   Defendants had a duty to disclose these facts to Plaintiff and Class members; it intentionally concealed those facts with intent to defraud; Plaintiff and Class members were unaware of these facts, and would have acted differently if they were aware; and Plaintiff and Class members sustained damage as a result.

106.   Defendants willfully engaged in these acts of deceit also so that they could access, monitor, transmit, and disclose Plaintiff's and Class members' sensitive personal data for their own

---

[8] *Privacy Policy*, GOOGLE, (last updated July 1, 2020), https://policies.google.com/privacy?hl=en-US#infocollect.

personal benefit, including an economic advantage over its competitors.

107.   Plaintiff and Class members seek recovery of their resulting damages, including economic damages, restitution, and disgorgement, as well as punitive damages and such other relief as the Court may deem just and proper.

**FOURTH CLAIM FOR RELIEF**
**Violation of the California Consumer Privacy Act ("CCPA")**
**Cal. Bus. & Prof. Code § 1798.100, *et seq.***
**(On Behalf of Plaintiff and the Class)**

108.   Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

109.   California's Consumer Privacy Act ("CCPA") protects consumers' personal information from collection and use by businesses without providing proper notice and obtaining consent.

110.   The CCPA applies to Defendants because they individually earn more than $25 million in annual gross revenue. Additionally, the CCPA applies to Defendants because they buy, sell, receive, or share, for commercial purposes, the personal information of more than 50,000 consumers, households, or devices.

111.   CCPA requires that a business who collects consumer's personal information, such as Defendants, disclose either "at or before the point of collection . . . the categories of personal information to be collected and the purposes for which the categories of personal information shall be used. *See* Cal. Civ Code § 1798.100(b).

112.   Furthermore, "[a] business shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." *See id.*

113.   Defendants violated the CCPA by failing to disclose that it collects Plaintiff's and Class members sensitive personal data from non-Google apps, including the duration of time spent on non-Google apples and the frequency that non-Google apps are opened.

114.   Furthermore, Defendants violated the CCPA by failing to disclose the true purpose

for collecting Plaintiff's and Class members sensitive personal data. When setting up an Android device, Defendants claim to collect personal data to offer a more personalized experience. Nowhere do Defendants disclose the actual purpose of its data collection: to gain a competitive edge over rival companies.

115.   As a direct and proximate result of the Defendants' acts, Plaintiff's and Class members' sensitive personal information was monitored, collected, and transmitted, without adequate notice and disclosures.

116.   As a direct and proximate result of Defendants' acts, Plaintiff and the Class members were injured and lost money or property, including but not limited to the dissemination of their sensitive personal data for Defendants' gain, including an unfair economic advantage, along with the costs received by Defendants for their services, the loss of Plaintiff's and Class members' legally protected interest in the confidentiality and privacy of their personal information, nominal damages and additional losses.

117.   Plaintiff seeks injunctive relief in the form of an order enjoining Defendants from continuing to violate the CCPA, as well as actual damages on behalf of himself and the Class.

118.   Plaintiff has also provided written notice to Defendants identifying the specific provisions of the CCPA that it has violated. If Defendants fail to respond to Plaintiff's notice letter or fail to agree to adequately cure the violations described herein (and to certify that no further violations will occur), Plaintiff will also seek statutory damages on behalf of himself and the Class.

**FIFTH CLAIM FOR RELIEF**
**Violation of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200,** ***et seq.***
**(On Behalf of Plaintiff and the Class)**

119.   Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

120.   Defendants' conduct as alleged herein constitutes unlawful, unfair, and/or fraudulent business acts or practices as prohibited by the UCL.

121.    Defendants engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, Defendants unlawfully monitored, collected, disclosed, and otherwise misused Plaintiff's and Class members' sensitive personal data without consent in violation of the California common law, California Constitution, California Civil Code § 1709, and the California Consumer Privacy Act.

122.    "Unfair" acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided.  Defendants' conduct is unfair under each of these tests.

123.    Defendants engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Defendants failed to disclose during the Class Period that it was monitoring, collecting, disclosing, and otherwise misusing Plaintiff's and Class members' sensitive personal data. *See* Cal. Bus. & Prof. Code § 17200.

124.    Defendants conduct was also unfair because it secretly collected Plaintiff's and Class members sensitive personal data—without their consent—in furtherance of benefitting themselves, including secretive market research, and did not adequately compensate Plaintiff and Class members for this information.

125.    Defendants' conduct violates the policies of the statutes referenced above. Moreover, Defendants' conduct is contrary to public policy, immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers. Among other things, it is contrary to the public policy in favor of protecting consumer data.

126.    The gravity of the harm of Defendants' secretly monitoring, collecting, disclosing, and other misuse of Plaintiff's and Class members' sensitive personal data is significant and there

is no corresponding benefit resulting from such conduct. Finally, because Plaintiff and Class Members were completely unaware of Defendants' conduct, they could not have possibly avoided the harm.

127.    Defendants' conduct, as described herein, constitutes a fraudulent business practice within the meaning of the UCL. Defendants have been able to amass a large collection of sensitive personal data by deceiving Plaintiff and Class members into believing this type of information was private and not monitored, collected, and misused by Defendants, and that, any information it did collect was for the sole purpose of offering a more personalized experience.

128.    Had Plaintiff known that his information would be monitored, disclosed and misused for Defendants' sole benefit, he would not have used Defendants' service. Plaintiff and Class Members have a property interest in their sensitive personal data. By surreptitiously intercepting, disclosing, and otherwise misusing Plaintiff's and Class members' information, Defendants have taken property from Plaintiff and Class members without providing just or any compensation.

129.    Plaintiff and Class members have lost money and property as a result of Defendants' conduct in violation of the UCL and seek restitution on behalf of themselves and Class members. Additionally, Plaintiff individually and on behalf of the Class, seeks an injunction enjoining Defendants from engaging in the unlawful conduct alleged in this claim and requiring Defendants to delete Plaintiff's and Class members' sensitive personal data, to cease further collection of Plaintiff's and Class members' sensitive personal data, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent.

<u>**SIXTH CLAIM FOR RELIEF**</u>
**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq***
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

131.    By failing to disclose that Defendants secretly monitored, collected, and otherwise misused Plaintiff's and Class members sensitive personal data while using non-Google apps, Defendants engaged in "unfair methods of competition and unfair or deceptive acts . . . in a transaction . . . that result[ed] . . . in the sale . . . of goods" to Plaintiff and the Class members in violation of Cal. Civ. Code § 1750 and Cal. Civ. Code § 1770(a)(5), (7), (9), (14), (16).

132.    For instance, Defendants made representations that they would protect Plaintiff's privacy interest, including explicit statements that data would only be accessed and collected in certain specific situations, none of which included collecting sensitive personal data while Plaintiff and Class members interact with non-Google apps.

133.    Defendants made these representations with no intention of living up to these representations.

134.    Plaintiff and Class members would not have purchased Android Smartphone devices had Google not made these false representations.

135.    Additionally, Plaintiff, individually and on behalf of the Class, seeks an injunction requiring Defendants to obtain consent prior to monitoring, collecting, and otherwise using Plaintiff's and Class members' sensitive personal data and to delete the data already collected, and any other relief which the court deems proper.

136.    Plaintiff, on behalf of himself and the Class, further intends to seek compensatory and punitive damages. Pursuant to Cal. Civ. Code § 1782(a), Plaintiff served Defendants with notice of their alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendants fail to provide appropriate relief for its violations of the CLRA, Plaintiff will amend this Complaint to seek monetary damages.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

137.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

138.    Plaintiff entered into a contract with Defendants by purchasing an Android Smartphone Device. As part of this contract, both parties agree to abide by Google's Terms of Service ("TOS").  Plaintiff has fully complied with his obligations under the TOS with regard to his use of Google's product and services.

139.    The TOS states that "by using our Services, you are agreeing to these terms."  The TOS expressly adopt additional terms relevant to specific services as follows: "Our Services are very diverse, so sometimes additional terms or product requirements (including age requirements) may apply. Additional terms will be available with the relevant Services, and those additional terms become part of your agreement with us if you use those Services."

140.    Plaintiff and Defendants are subject to Google's privacy policy, which is incorporated into the contract through the TOS.[9]

141.    The contract equally incorporates and implements Google's "Privacy and Security Principles" which "guide our products, our processes, and our people in keeping our users' data private, safe, and secure."[10]  The overarching Privacy and Security Principle is to: "Respect our users. Respect their privacy."

142.    Google's privacy policy states that it "collect[s] information to provide better

---

[9] *Privacy Policy*, GOOGLE, (last updated July 1, 2020), https://policies.google.com/privacy?hl=en-US#infocollect.

[10] *Our Privacy and Security Principles*, GOOGLE, https://safety.google/principles/ (last visited July 29, 2020).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

services to all our users."[11] Google breached the contract because it did not collect this information to "provide better services," rather, it was to gain a competitive edge in the market against its rivals.

143.    Google's privacy policy does not disclose that Google is monitoring and collecting sensitive personal data while Android Smartphone users interact with non-Google apps. Google only states that it may collect information about "activity on third-party sites and apps that use our services." Google breached its contract with Plaintiff and Class members by monitoring and collecting sensitive personal data, beyond the scope of Google's privacy policy and the TOS.

144.    By tracking Plaintiff's and Class members' app activity without their consent, Google has breached material terms of the contract.

145.    As a result of Google's breach of contract, Plaintiff and Class members have suffered damages. Specifically, the products and services Plaintiff and Class members received in exchange for the purchase price Android Smartphone Devices were worth less than the services they paid for because Plaintiff's sensitive personal information was monitored and collected without their consent.  Plaintiff and Class members would not have purchased, or would not have paid as high a price, for Android Smartphone Devices if they had known that Google would breach the TOS and privacy policy by tracking their activity, including their activity on non-Google apps, when using an Android Smartphone Device.

**EIGHTH CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

146.    Plaintiff incorporates by reference and re-alleges the preceding allegations, as though fully set forth herein.

---

[11] *Privacy Policy*, GOOGLE, (updated Dec. 19, 2019) (archive by Plaintiff's counsel).

147.   When Plaintiff and Class members paid money and purchased one or more Android Smartphone Devices, they entered into implied contracts with Defendants.

148.   Defendants solicited and invited prospective customers such as Plaintiff and Class members with claims that they care about Plaintiff and Class members privacy rights.

149.   Defendants' offer included specific assurances from Google's TOS and privacy policy, including that Google would only collect data to "improve [their] services" and only in the limited situations described in the TOS.

150.   Plaintiff and Class members accepted Defendants' offers and purchased the Android Smartphone Devices because of these promises.

151.   In entering into such implied contracts, Plaintiff and Class members reasonably believed that Defendants would comply with relevant laws and regulations, including privacy laws.

152.   Plaintiff and Class members reasonably believed that Defendants would not monitor and/or record their app usage activity, as stated in their TOS and privacy policy.

153.   Defendants' implied promise not to collect Plaintiff's and Class members sensitive personal information is evidenced by, e.g., the representations in Google's TOS and privacy policy set forth above.

154.   Plaintiff and Class members would not have purchased the Android Smartphone Device from Defendants in the absence of such promises.

155.   Plaintiff and Class members fully performed their obligations under the implied contracts with Defendants by paying for their Android Smartphone Devices.

156.   Defendants breached their implied contract with Plaintiff and Class members by secretly spying on users' activity and collecting sensitive personal data for Defendants' own benefit, in violation of the TOS and privacy policy.

157.    As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiff and Class members have sustained actual losses, including, but not limited to, an invasion of privacy, and are entitled to compensatory and consequential damages.

### NINTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

158.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

159.    Defendants received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

160.    In particular, Defendants received benefits from Plaintiff and Class members in the form of the sensitive personal data that Defendants collected from Plaintiff and Class members, without authorization and proper compensation. Defendants have monitored, transmitted, and disseminated this data, for their own gain, providing Defendants with economic, intangible, and other benefits, including an unfair economic advantage over its competitors.

161.    Defendants unjustly retained those benefits at the expense of Plaintiff and Class members because Defendants' conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and the Class.

162.    The benefits that Defendants derived from Plaintiff and Class members rightly belong to Plaintiff and Class members. It would be inequitable under unjust enrichment principles in California and every other state for Defendants to be permitted to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

163.    Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds it received, and such other relief as the Court may deem just and proper.

**TENTH CLAIM FOR RELIEF**
**Request for Relief Under the Declaratory Judgment Act**
**28 U.S.C. § 2201, *et seq.***
**(On Behalf of Plaintiff and the Class)**

164.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

165.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

166.    An actual controversy has arisen in the wake of Defendants' monitoring, collection, and misuse of Plaintiff's and Class members' sensitive personal data without their consent as alleged herein in violation of Defendants' common law and statutory duties.

167.    Plaintiff continues to suffer injury and damages as described herein as Defendants continue to monitor, collect, and misuse Plaintiff's and Class members' sensitive personal data.

168.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendants continue to owe a legal duty to not monitor, collect, and misuse Plaintiff's and Class members' sensitive personal information under, *inter alia*, the common law, California Constitution, Cal. Civil Code § 1709, and the California Consumer Privacy Act.

b.    Defendants continue to breach their legal duties and be in breach of their contract with Plaintiff and Class members by continuing to monitor, collect, and misuse Plaintiff's and Class members' sensitive personal data; and

c.    Defendants' ongoing breaches of their legal duty and breach of contract continue to cause Plaintiff and Class members harm.

169.    The Court should also issue corresponding injunctive relief, including but not limited to enjoining Google from engaging in the unlawful conduct alleged in this claim and requiring Google to delete Plaintiff's and Class members' data, cease further collection of Plaintiff's and Class members' sensitive data, and other appropriate equitable relief, including but not limited to

27

improving its privacy disclosures and obtaining adequately informed consent.

170.    If an injunction is not issued, Plaintiff and the Class members will suffer irreparable injury and lack an adequate legal remedy in the event of Defendants' ongoing conduct.

171.    Federal and state laws prohibit, among other things, the unlawful monitoring, collection, and misuse of sensitive personal data without consent. California specifically recognizes privacy as a fundamental right. Given that Defendants admit that they monitor and collect their customers' sensitive personal data, the risk of continued violations of federal and California law is real, immediate, and substantial. Plaintiff does not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiff will be forced to bring multiple lawsuits to rectify the same conduct.

172.    The hardships to Plaintiff and Class members if an injunction is not issued exceeds the hardships to Defendants if an injunction is issues. On the other hand, the cost to Defendants of complying with an injunction by complying with federal and California law and by ceasing to engage in the misconduct alleged herein is relatively minimal, and Defendants have a pre-existing legal obligation to avoid invading the privacy rights of consumers.

173.    Issuance of the requests injunction will serve the public interest by preventing ongoing monitoring, collection, and misuse of sensitive personal data without consent, thus eliminating the injuries that would result to Plaintiff and the Class, and the potentially hundreds of thousands of consumers who purchased Android Devices.

### ELEVENTH CLAIM FOR RELIEF
**Request for Relief Under California's Invasion of Privacy Act**
*Cal. Penal Code § 631*
**(On Behalf of Plaintiff and the Class)**

174.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

175.    California's Invasion of Privacy Act ("CIPA") prohibits persons from intentionally,

willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within California. Cal. Penal Code § 631.

176.    CIPA also prohibits any person from using, or attempting to use, in any manner, or for any purpose, or communicating in any way, any information so obtained. CIPA further provides that any person who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above is punishable by fine or imprisonment. California Penal Code § 631.

177.    As described herein, Plaintiff and the Class members did not authorize Defendants to collect the subject information. Without the consent of Plaintiff or the Class, Google aided, agreed with, employed, or permitted the unauthorized disclosures of users' information.

178.    At all times, Defendants' actions complained of herein have been intentional and willful, as evidenced by the design and features enabling unauthorized data collection and disclosure.

179.    Plaintiff and the Class members suffered harm as a result of Defendants' violations of CIPA, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the greater of five thousand ($5,000) per violation and three times the amount of actual damages sustained, as authorized by California Penal Code § 637.2, and (c) reasonable attorneys' fees and other litigation costs reasonably incurred.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the proposed Class respectfully requests that the Court enter an order:

A.    Certifying the Class and appointing Plaintiff as Class Representative and his counsel

1 | as Class Counsel;

2 |       B.     Finding that Defendants' conduct was unlawful as alleged herein;

3 |       C.     Awarding such injunctive and other equitable relief as the Court deems just and

4 | proper;

5 |       D.     Awarding Plaintiff and the Class members statutory, actual, compensatory,

6 | consequential, punitive, and nominal damages;

7 |       E.     Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

8 |       F.     Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and

9 | expenses; and

10 |       G.     Granting such other relief as the Court deems just and proper.

11 | **<u>DEMAND FOR JURY TRIAL</u>**

12 | Plaintiff demands a trial by jury for all issues so triable.

13 |

14 | Dated:  August 5, 2020           */s/ Willem F. Jonckheer*

                                 Robert C. Schubert

15 |             Willem F. Jonckheer

16 |             **SCHUBERT JONCKHEER & KOLBE LLP**

            Three Embarcadero Center, Suite 1650

17 |             San Francisco, California 94111

            Telephone: (415) 788-4220

18 |             Facsimile: (415) 788-0161

19 |             rschubert@sjk.law

            wjonckheer@sjk.law

20 |             Christian Levis (*pro hac vice* forthcoming)

21 |             Amanda Fiorilla (*pro hac vice* forthcoming)

            Henry Kusjanovic (*pro hac vice* forthcoming)

22 |             **LOWEY DANNENBERG, P.C.**

            44 South Broadway, Suite 1100

23 |             White Plains, NY 10601

            Telephone: (914) 997-0500

24 |             Facsimile: (914) 997-0035

25 |             clevis@lowey.com

            afiorilla@lowey.com

26 |             hkusjanovic@lowey.com

27 |             Anthony M. Christina (*pro hac vice* forthcoming)

28 |             **LOWEY DANNENBERG, P.C.**

One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
achristina@lowey.com

*Attorneys for Plaintiff and the Proposed Class*