KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
CHESSIE THACHER - # 296767
cthacher@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
GOOGLE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT McCOY, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>ALPHABET INC., et al.,<br><br>                    Defendants. | Case No. 5:20-cv-05427-SVK<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Judge:      Hon. Susan van Keulen<br><br>Hearing:    December 8, 2020<br>Time:        10:00 a.m.<br>Place:        Courtroom 6 – 4th Floor<br>                280 South 1st Street<br>                San Jose, CA 95113<br><br>Date Filed:  August 5, 2020 |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND .................................................................................................... 2

    A.     Allegations about Google's collection of third-party-app usage data. .................. 2

    B.     Google discloses that it may collect third-party-app usage data. .......................... 3

    C.     Users have the option to share third-party-app usage data with Google. ............... 4

    D.     Allegations about McCoy's third-party-app usage data. ....................................... 4

III.   ISSUES TO BE DECIDED ...................................................................................... 5

IV.    LEGAL STANDARD .............................................................................................. 5

    A.     Motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). ..................................................................................................... 5

    B.     Motion to dismiss for failure to state a claim under Rule 12(b)(6). ..................... 5

V.     ARGUMENT ......................................................................................................... 6

    A.     The Complaint fails to plead facts sufficient to establish Article III standing and should be dismissed under Rule 12(b)(1). ........................................ 6

    B.     The Complaint should be dismissed under Rule 12(b)(6) because Google discloses that it collects third-party-app usage data. ............................................ 7

        1.     Google's disclosures are not "inadequate." ................................................ 7

        2.     McCoy's consent to Google's collection of third-party-app usage data defeats all of the claims in the Complaint. ......................................... 9

    C.     McCoy fails to state a claim for invasion of privacy under the California Constitution. ..................................................................................................... 10

    D.     McCoy fails to state a claim for intrusion upon seclusion. ................................. 12

    E.     McCoy fails to state a claim under the California Invasion of Privacy Act. ........ 13

    F.     McCoy fails to state a claim under the California Consumer Privacy Act. ........... 15

    G.     McCoy fails to state a claim for fraud. ............................................................... 16

        1.     McCoy does not identify any false or misleading statement made by Google, intentionally or otherwise. .......................................................... 16

        2.     McCoy does not adequately allege reliance and resulting damage. ......... 17

H.      McCoy fails to state a claim under the California Legal Remedies Act. ............. 18

I.      McCoy fails to state a claim under California's Unfair Competition Law........... 20

     1.      McCoy has not established statutory standing under the UCL. ............... 20

     2.      McCoy's UCL claims also fail because his predicate claims fail. ........... 21

     3.      McCoy cannot seek damages or restitution under the UCL..................... 22

J.      McCoy fails to state a claim for breach of contract or breach of implied
    contract.................................................................................................... 23

     1.      Google's contractual obligations to McCoy are not implied. .................. 23

     2.      Google did not breach any contract entered into with McCoy................. 24

K.      McCoy fails to state a claim for unjust enrichment............................................. 24

L.      McCoy fails to state a claim for declaratory judgment. ...................................... 25

VI.     CONCLUSION.......................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*AdTrader, Inc. v. Google LLC,*
   No. 17-CV-07082-BLF, 2018 WL 3428525 (N.D. Cal. July 13, 2018) ............................... 25

5

*In re Apple & AT&T iPad Unlimited Data Plan Litig.,*
6    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ........................................................................... 20

7    *Ashcroft v. Iqbal,*
        556 U.S. 662 (2009) ............................................................................................... 5, 11, 18
8

9    *Backhaut v. Apple, Inc.,*
        74 F. Supp. 3d 1033 (N.D. Cal. 2014) ............................................................................. 22
10

*Baltazar v. Apple Inc.,*
11      No. C 10-03231 WHA, 2011 WL 6747884 (N.D. Cal. Dec. 22, 2011) ............................... 21

12   *Be In, Inc. v. Google Inc.,*
        No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ............................... 23
13

14   *Bell Atl. Corp. v. Twombly,*
        550 U.S. 544 (2007) .......................................................................................................... 5
15

*Botello v. Morgan Hill Unified Sch. Dist.,*
16      No. C09-02121 HRL, 2009 WL 3918930 (N.D. Cal. Nov. 18, 2009) ................................. 10

17   *Bradley v. Google, Inc.,*
        No. C 06-05289 WHA, 2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) ............................... 14
18

19   *Brodsky v. Apple Inc.,*
        No. 19-CV-00712-LHK, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ........................ 14, 15
20

*Cadlo v. Owens-Illinois, Inc.,*
21      125 Cal. App. 4th 513 (2004) ........................................................................................... 17

22   *Carrico v. City & Cnty. of San Francisco,*
        656 F.3d 1002 (9th Cir. 2011) ............................................................................................ 5
23

24   *In re Facebook Privacy Litig.,*
        791 F. Supp. 2d 705 (N.D. Cal. 2011) ............................................................................. 20

25

26   *Ferrington v. McAfee, Inc.,*
        No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ............................... 19

27   *In re Google Assistant Privacy Litig.,*
        No. 19-cv-04286-BLF, 2020 WL 2219022 (N.D. Cal. May 6, 2020) ................................. 15
28

*In re Google Location History Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................................................................11, 12, 13

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ............................................................................12, 20

*In re Google, Inc. Privacy Policy Litig.*,
  No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .................................. 21

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) .............................................................................................9, 12, 13

*Herskowitz v. Apple Inc.*,
  940 F. Supp. 2d 1131 (N.D. Cal. 2013) ............................................................................ 22

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  7 Cal. 4th 1 (1994) .......................................................................................................... 10

*Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*,
  No. 5:12-CV-6209-EJD, 2014 WL 3372583 (N.D. Cal. July 9, 2014) ................................ 17

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) ................................................................................ 21

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................12, 13

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...................................................................................... 5, 18

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) .................................................................................................... 20

*Lazar v. Superior Ct.*,
  12 Cal. 4th 631 (1996) .................................................................................................... 16

*Leonel v. Am. Airlines, Inc.*,
  400 F.3d 702 (9th Cir. 2005) ........................................................................................... 10

*Loder v. City of Glendale*,
  14 Cal. 4th 846 (1997) .................................................................................................... 10

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................................12, 13

*Lozano v. AT&T Wireless Servs. Inc.*,
  504 F.3d 718 (9th Cir. 2007) ........................................................................................... 22

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................... 5, 6

*Malasky v. Esposito*,
  No. 16-CV-04102-DMR, 2019 WL 79032 (N.D. Cal. Jan. 2, 2019 .................................... 25

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ............................................................................. 20

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
  306 F.3d 806 (9th Cir. 2002)........................................................................................... 13

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) .................................................................................................... 19

*Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v.
  Philco-Ford Corp.*,
  661 F.2d 776 (9th Cir. 1981)............................................................................................ 16

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
  No. 17-CV-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017).........................12, 13

*Muhammad v. Conner*,
  No. 10-CV-1449 YGR, 2012 WL 2428937 (N.D. Cal. June 26, 2012) ............................... 25

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*,
  228 F.3d 1043 (9th Cir. 2000)......................................................................................... 14

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................................................................ 23

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996)........................................................................................... 25

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) .............................................................................. 21

*Perrine v. Sega of America*,
  No. C 13-01962, 2013 WL 6328489 (N.D. Cal. Oct. 3, 2013)............................................ 19

*Phillips v. Apple Inc.*,
  No. 15-CV-04879-LHK, 2016 WL 5846992 (N.D. Cal. Oct. 6, 2016)................................. 23

*Pioneer Elecs. (USA), Inc. v. Superior Ct.*,
  40 Cal. 4th 360 (2007) .................................................................................................... 10

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ............................................................................ 25

*San Miguel v. HP Inc.*,
  317 F. Supp. 3d 1075 (N.D. Cal. 2018) ............................................................................ 22

*Schauer v. Mandarin Gems of Cal., Inc.*,
    125 Cal. App. 4th 949 (2005) ........................................................................... 19

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ....................................................................... 16, 17

*Sloan v. Gen. Motors LLC*,
    No. 16-CV-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) ............................. 25

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018), (N.D. Cal. 2017) ................................................... 7

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................. 5, 6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .............................................................................. 5

*Susan S. v. Israels*,
    55 Cal. App. 4th 1290 (1997) ............................................................................. 10

*Swearingen v. Healthy Beverage, LLC*,
    No. 13-CV-04385-EMC, 2017 WL 1650552 (N.D. Cal. May 2, 2017) ............................. 25

*Urbaniak v. Newton*,
    226 Cal. App. 3d 1128 (1991) ............................................................................. 10

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................... 5, 18

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1979) ............................................................................. 14

*Williamson v. McAfee, Inc.*,
    No. 14-cv-00158-EJD, 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ............................. 22

*Wofford v. Apple, Inc.*,
    No. 11-cv-0034, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ...................................... 19

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................. 10, 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ............................. 23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) ............................................................... 18

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ............................................................... 24

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ......................................................................................14, 15

**Statutes**

28 U.S.C. § 2201 ................................................................................................................. 25

Cal. Bus. & Prof. Code § 17200 .......................................................................................... 2

Cal. Bus. & Prof. Code § 17203 ....................................................................................22, 23

Cal. Bus. & Prof. Code § 17204 ....................................................................................20, 21

Cal. Civ. Code § 1619 ......................................................................................................... 23

Cal. Civ. Code § 1625 ......................................................................................................... 23

Cal. Civ. Code § 1709 ..................................................................................................9, 16, 21

Cal. Civ. Code § 1750 .......................................................................................................... 2

Cal. Civ. Code § 1770 ......................................................................................................... 19

Cal. Civ. Code § 1780 ....................................................................................................19, 20

Cal. Civ. Code § 1798.100 ..............................................................................................2, 9, 15

Cal. Civ. Code § 1798.140 .................................................................................................. 15

Cal. Civ. Code § 1798.150 ..............................................................................................9, 15, 21

Cal. Civ. Code § 3515 .......................................................................................................... 6

Cal. Penal Code § 631 .................................................................................... 1, 9, 13, 14, 15

**Federal Statutes**

Fed. R. Civ. P. 8 ................................................................................................................. 18

Fed. R. Civ. P. 9 ................................................................................................. 5, 16, 17, 18

Fed. R. Civ. P. 12 .................................................................................................*passim*

1  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on December 8, 2020, at 10:00 a.m., in Courtroom 6 of the

3  above-captioned Court, located at 280 South 1st Street, 4th Floor, San Jose, California 95113,

4  defendant Google LLC ("Google") will, and hereby does, move for an order dismissing Plaintiff

5  Robert McCoy's Class Action Complaint in its entirety and with prejudice.[1]

6       Google brings this motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure on

7  the ground that the Complaint fails to plead facts sufficient to establish Article III standing and

8  under Rule 12(b)(6) on the ground that the Complaint fails to state any claim upon which relief

9  can be granted.  This motion is based on this Notice of Motion, the following Memorandum of

10  Points and Authorities, Google's Request for Judicial Notice, the Declaration of Christina Lee

11  with the exhibits attached thereto, and on all pleadings and papers on file or to be filed in the

12  above-entitled action, on the arguments of counsel, and on any other matters that may properly

13  come before the Court for its consideration.

14

15  Dated:  September 30, 2020                    KEKER, VAN NEST & PETERS LLP

16

17                                 By:   */s/ Benjamin Berkowitz*
                                         BENJAMIN BERKOWITZ
18                                       THOMAS E. GORMAN
                                         CHESSIE THACHER
19                                       CHRISTINA LEE

20                                       Attorneys for Defendant
21                                       GOOGLE LLC

22

23

24

25

26

27

---

28  [1] Plaintiff Robert McCoy voluntarily dismissed defendant Alphabet, Inc. on September 8, 2020.
    *See* ECF No. 21.

**MEMORANDUM OF POINTS AND AUTHORITIES**[2]

## I.      INTRODUCTION

Plaintiff Robert McCoy's Complaint is a tangle of internally inconsistent and insufficiently pleaded allegations.  At the core of the Complaint, however, is the charge that Google "secretively" collects information about how users on the Android platform interact with third-party apps.  But the Complaint acknowledges that this is a practice that Google discloses through its Privacy Policy and for which it obtains users' consent.  Thus, McCoy's Complaint fails as a matter of law.

The Court should dismiss McCoy's Complaint in its entirety because McCoy has not alleged a cognizable injury and has therefore failed to establish standing under Article III.  To the extent Google collected any third-party-app usage information, McCoy consented to that collection.  McCoy's allegation that his consent was not "meaningful" asks this Court to ignore a plain reading of the Google terms and policies upon which his Complaint relies.  This disclosure and consent therefore doom the Complaint and require dismissal under either Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The individual claims in the Complaint also fail for additional, independent reasons under Rule 12(b)(6):

McCoy's privacy-related claims are all terminally flawed.  *See* Counts I, II, IV, XI. McCoy fails to state a claim for violation of his constitutional and common-law privacy rights because he fails to allege even a bare privacy violation, much less the type of "egregious" or "highly offensive" conduct that would satisfy the "high bar" required under California law. McCoy also fails to state any statutory claims under the California Invasion of Privacy Act ("CIPA") or the California Consumer Privacy Act ("CCPA") because these statutes are inapplicable to the conduct alleged.  CIPA is a criminal statute that does not apply either to information consensually obtained or to routine commercial data, such as the app-usage statistics at issue here.  *See* Cal. Penal Code § 631.  And the CCPA simply does not provide a private right

---

[2] Throughout this brief, unless otherwise stated, emphases are added to quotations, and internal punctuation, alterations, and citations are omitted therefrom.

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 5:20-cv-05427-SVK

of action except in specific circumstances (a data breach) that are also not present here.  *See* Cal. Civ. Code §§ 1798.100 *et seq.*

McCoy's fraud-based claims all fail because McCoy does not allege that Google collects any information other than what Google properly discloses in its Privacy Policy.  *See* Counts III, V, VI.  He therefore fails to plead a false statement by Google, reliance upon any such statement, or economic harm.  McCoy's California Legal Remedies Act ("CLRA") claim fails for the same reasons, and also because McCoy does not allege any qualifying transaction under the statute and does not satisfy the CLRA's procedural requirements.  *See* Cal. Civ. Code §§ 1750 *et seq.*  Likewise, given that McCoy has failed to state a claim for any unlawful, unfair, or fraudulent business practice, and has failed to allege any resulting economic harm, McCoy cannot state a claim under California's Unfair Competition Law ("UCL").  *See* Cal. Bus. & Prof. Code § 17200.

McCoy's contract and quasi-contract claims also fail.  *See* Counts VII, VIII, IX.  The breach-of-contract claim fails because McCoy has not identified any provision in Google's Terms of Service ("TOS") that it breached.  McCoy's claims for breach of implied contract and unjust enrichment fail because neither of these quasi-contract claims can survive alongside the TOS.

Finally, McCoy's claim under the Declaratory Judgment Act is derivative of his other claims.  *See* Count X.  Thus, it fails for the same reasons as his other claims.

McCoy's Complaint should be dismissed in its entirety and with prejudice.

## II.   BACKGROUND

### A.   Allegations about Google's collection of third-party-app usage data.

According to his Complaint, Plaintiff Robert McCoy lives in New York and owns a Google Pixel XL Android smartphone.  Compl. ¶¶ 11, 19.  McCoy filed this putative class action shortly after the website *The Information* published what he characterizes as a "bombshell report."  *Id.* ¶ 23.[3]  Based on this article, McCoy alleges that Google maintains an "undisclosed" program called "Android Lockbox."  *Id.* ¶ 24.  Google purportedly uses this program to collect certain app-usage data from users of its Android mobile operating system when those users

---

[3] *See also* Ex. 1 to the Declaration of Christina Lee in Support of Google's Request for Judicial Notice.  All exhibits attached to the Lee Declaration are hereinafter referred to as an "RJN Ex."

"interact with non-Google applications" on their phones.  *Id.* ¶ 4.  Specifically, McCoy avers that Google can collect "data on when and how often an Android Smartphone user opens and runs non-Google apps and the amount of time spent in non-Google apps" while on Google's Android platform.  *Id.* ¶ 25.  This data is useful for many purposes, such as a "feature on Android that redirects battery power to the apps that people use more frequently."  RJN Ex. 1 at 2.  But McCoy asserts that, even though Google claims to collect this third-party-app usage data to provide users with "a more personalized experience" and "better services," these statements are "objectively false" because Google really uses this "sensitive personal data" to develop "competing apps against its competitors."  Compl. ¶¶ 1, 28–30, 33–38, 101–02.

**B.  Google discloses that it may collect third-party-app usage data.**

Google's Privacy Policy discloses that it may collect data regarding users' activity on third-party apps.  Compl. ¶¶ 40, 143.  In particular, the Privacy Policy states: "We collect information about your activity in our services, which we use to do things like recommend a YouTube video you might like."  RJN Ex. 2A at 3; *see also* RJN Exs. 2C–D.  The Privacy Policy makes clear that the information Google collects may include, among other categories, "**activity on third-party sites and apps that use our services**."  RJN Ex. 2A at 3.; *see also id.* at 16 (reiterating that Google collects "Internet, network, and other activity information such as . . . activity on third-party sites and apps that use our services").

Although McCoy baldly alleges that Google does ***not*** disclose that it collects data to help develop its own services (*see, e.g.*, Compl. ¶ 38), Google's Privacy Policy explains in a section entitled "Why Google Collects Data" that Google uses "data to build better services" (RJN Ex. 2A at 5–7).  The Privacy Policy elaborates that building "better services" includes using data to "maintain & improve our services," "develop new services," "provide personalized services, including content and ads," "measure performance," and "protect Google, [its] users, and the public."  *Id.*  The Privacy Policy also highlights that Google may use the information that it collects for "business purposes," such as "to improve our services and to develop new products, features and technologies that benefit our users and the public."  *Id.* at 17.

C.     **Users have the option to share third-party-app usage data with Google.**

Google's Privacy Policy advises all users that the information Google "collects, and how that information is used, depends on how you use our services and how you manage your privacy controls."  RJN Ex. 2A at 2.  With respect to third-party-app usage data, users have the option of choosing to share this data with Google when they set up their devices.  RJN Ex. 1 at 4.  As explained in the article incorporated into McCoy's Complaint, "when people set up Google services on their Android devices," they receive a "prompt" enabling them to "choose to share their activity on the apps they use" with Google.  *Id.*; *see also* Compl. ¶ 33.

Google also provides users with options to control third-party-app usage data after setting-up a device.  The Privacy Policy, for example, specifically informs users that, "[d]epending on your account settings, your activity on other sites and apps may be associated with your personal information in order to improve Google's services."  RJN Ex. 2A at 7; *see also* RJN Ex. 4 at 1 (informing users how to "turn on or off" the sharing of usage and diagnostics data, such as "how often you use your apps"); RJN Ex. 5 at 1 (informing users that they "control whether app activity from your device is saved" and can turn "off or delete past activity at any time").

D.     **Allegations about McCoy's third-party-app usage data.**

McCoy alleges that he agreed to Google's Terms of Service and that he is "subject to" Google's Privacy Policy.  Compl. ¶¶ 138–40.  The Complaint is silent, however, as to McCoy's Android settings and whether McCoy chose to share his third-party-app usage data with Google.  Nonetheless, McCoy repeatedly asserts, in conclusory fashion, that Google collected "sensitive personal data" from him and other Android smartphone users without "meaningful consent."[4]  McCoy does not specify the nature of this sensitive information; instead, he merely alleges that Google collected "his data related to TikTok," which could include the "frequency" with which he used TikTok and the "duration of time" he spent in the app on his phone.  *Id.* ¶¶ 31, 40, 93, 103, 113.

---

[4] *See* Compl. ¶¶ 1, 4-5, 22-23, 26-37, 42-43, 46-47, 51, 55, 57, 77-78, 81, 91-93, 95, 102, 104, 106, 113-14, 116, 121, 123-24, 126-29, 131-32, 135, 143, 156, 160, 166-69, 171, 173.

1

## III.    ISSUES TO BE DECIDED

Whether the Complaint alleges facts sufficient to establish Article III standing under Federal Rule of Civil Procedure 12(b)(1) and whether the Complaint states a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## IV.    LEGAL STANDARD

### A.    Motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

Under Federal Rule 12(b)(1), the Court must dismiss any action that lacks subject-matter jurisdiction.  At the center of the Court's jurisdictional inquiry is Article III's standing requirement.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In order to establish Article III standing, the "plaintiff must have (**1**) suffered an injury in fact, (**2**) that is fairly traceable to the challenged conduct of the defendant, and (**3**) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

### B.    Motion to dismiss for failure to state a claim under Rule 12(b)(6).

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must plead facts showing that his right to relief rises above "the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  The Court also "need not" accept the truth of any allegations contradicted by matters properly subject to judicial notice.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Dismissal without leave to amend is appropriate if "amendment would be futile."  *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Additionally, where a complaint contains allegations that sound in fraud, "a party must state with particularity the circumstances constituting [the] fraud."  Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).  "Any averments which do not meet that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

1

2

3

## V.    ARGUMENT

### A.    The Complaint fails to plead facts sufficient to establish Article III standing and should be dismissed under Rule 12(b)(1).

4

5

6

7

To satisfy the "irreducible constitutional minimum of standing," McCoy must establish an injury that is "concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61.  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist," and cannot be "abstract."  *Spokeo*, 136 S. Ct. at 1548.

8

9

10

This Complaint reveals an Article III problem on its face because McCoy acknowledges that he consented to share his third-party-app usage data with Google and that Google disclosed how it might use that data.  Such consent negates any possibility of injury.

11

12

13

14

15

16

17

Here, McCoy has failed to demonstrate any concrete and particularized injury because the conduct that he complains about was fully disclosed in Google's Privacy Policy.  Not only does McCoy admit that he is "subject to" this Privacy Policy (Compl. ¶ 140), he also admits that the policy advises users that Google may collect information about "activity on third-party sites and apps that use [Google's] services" (*id.* ¶ 143; *see also* RJN Ex. 2A at 3).  Having consented to Google's Privacy Policy, McCoy cannot now claim injury from conduct explicitly disclosed in that policy (as discussed above and in further detail below).

18

19

20

21

22

23

24

25

In addition, documents incorporated into the Complaint demonstrate that Google does not collect third-party-app usage data without user consent.  *See* RJN Ex. 1 at 4; *see also* Compl. ¶¶ 33–36.  Because the Complaint admits McCoy consented to the Privacy Policy and also confirms that, if McCoy's third-party-app usage data was actually collected, he consented to that collection, McCoy cannot claim he was injured by the collection.  Indeed, it is axiomatic that he "who consents to an act is not wronged by it."  Cal. Civ. Code § 3515.  McCoy's purported injury is therefore hypothetical or conjectural at best, and neither sufficiently concrete nor particularized to establish Article III standing.  *See Spokeo*, 136 S. Ct. at 1548.

26

27

28

1390411

**B.**     **The Complaint should be dismissed under Rule 12(b)(6) because Google discloses that it collects third-party-app usage data.**

Google's disclosures, and McCoy's consent, are also an absolute defense to all claims under Rule 12(b)(6).  In determining consent to "data tracking and collection practices," courts consider "whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization."  *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018), *aff'g* 262 F. Supp. 3d 943 (N.D. Cal. 2017).  The circumstances here demonstrate that—based on Google's Privacy Policy and the process users go through when they set up their devices—a reasonable person would understand that Google collects third-party-app usage data for a wide range of purposes, including the development of new products and services, and that users have the option to decide to share their data with Google.  Such disclosure and consent defeat all of McCoy's claims under Rule 12(b)(6).  *See id.*, 262 F. Supp. 3d at 955–56 (dismissing claims with prejudice because plaintiffs' consent to data collection "bars" their claims and "no amendment could change the fact that Plaintiffs consented to Facebook's conduct").

**1.**     **Google's disclosures are not "inadequate."**

As McCoy accurately recognizes (and quotes), Google's Privacy Policy informs users that Google "collect[s] information to provide better services to all our users" and that some of the information it collects may include "activity on third-party sites and apps that use our services." Compl. ¶¶ 38, 143; *see also* RJN Ex. 2A at 3.  McCoy also accurately recognizes that users "can choose to share their activity on the apps they use" when they "set up Google services on their Android devices" and doing so can, among other things, provide users with "a more personalized experience."  RJN Ex. 1 at 4; *see also* Compl. ¶ 33.  Taken together, these facts conclusively undermine McCoy's threadbare contention that "[n]owhere does Google explain, nor obtain consent, to collect Android Smartphone users' data while users interact with non-Google apps . . . ."  Compl. ¶ 40.

Google's specific disclosures about the collection of third-party-app usage data also undermine McCoy's contention that Google's disclosures were inadequate or misleading.  *See,*

*e.g.*, *id.* ¶¶ 1, 5, 33, 38, 39, 41–42, 49, 103.  Google's Privacy Policy indisputably discloses that Google collects information—including third-party-app usage information—for a wide range of purposes, such as to ensure that services are working as intended, to troubleshoot issues, to measure performance, and to improve reliability.  RJN Ex. 2A at 5–8.  The materials McCoy incorporated into his Complaint further acknowledge that Google collects third-party-app usage data to improve things like battery performance.  RJN Ex. 1 at 2.  McCoy therefore cannot credibly claim that he thought any information collected was "for the sole purpose of offering a more personalized experience."  Compl. ¶ 127.  Nor, in light of these many benefits to users, can McCoy credibly allege that any information collected by Google was for the company's "sole benefit."  *Id.* ¶ 128; *see also id.* ¶ 149.

Moreover, Google specifically disclosed exactly what McCoy says he did not know.  At bottom, McCoy admits that he knew that Google could use third-party-app usage data to create "better services," but alleges he did not realize that some of those services ***might*** compete in the marketplace.  *Id.* ¶¶ 38, 42.  Again, however, Google's Privacy Policy explicitly explains that Google collects information to "**build better services**," "maintain & improve" services, "**develop new services**," and "provide personalized service."  RJN Ex. 2A at 5–7.  To make things even clearer, when explaining the "Business purposes for which this information may be used or disclosed," Google states that the information it collects may be used for "research and development," including "to improve our services and to develop new products, features and technologies that benefit our users and the public."  *Id.*  at 17.

Therefore, these disclosures make clear that Google's collection of "[a]ctivity on third-party sites and apps that use [its] services" includes basic information as to what apps a user is using, as well as how frequently and for how long.  *Id.* at 3.  Indeed, McCoy fails to explain what "activity" or "app usage data" he thought Google would collect under the disclosures in the Privacy Policy or the device set-up process.  *See id.*; RJN Ex. 1 at 4.  These disclosures also make clear that Google may use this data not just to improve existing features and services, but also to develop "new" and "better services."  McCoy should not be permitted to attack the sufficiency of these disclosures by quoting only excerpts of Google's terms and policies, and then pretending

1390411

1    that Google does not—in the very same materials—disclose the conduct about which he

2    complains.

3              **2.    McCoy's consent to Google's collection of third-party-app usage data**
              **defeats all of the claims in the Complaint.**
4

5              Given Google's disclosures regarding its collection of third-party-app usage information

6    on its Android operating system, McCoy cannot state a claim for invasion of privacy—whether

7    under the California Constitution, the common-law tort of intrusion upon seclusion, CIPA, or the

8    CCPA.  Because Google discloses that it may collect information regarding user activity on third-

9    party apps, Google has not, under the circumstances, intruded upon any user's reasonable

10   expectation of privacy in that information, and it certainly has not done so in a manner "highly

11   offensive to a reasonable person."  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

12   Disclosure and consent also defeat McCoy's CIPA claim under California Penal Code § 631 and

13   his CCPA claim under California Civil Code § 1798.100.  Neither of these statutes apply to the

14   conduct alleged, but, even if they did, they prohibit only conduct performed without consent or

15   authorization.  *See* Cal. Penal Code § 631(a); Cal. Civ. Code § 1798.150.

16             For these same reasons, McCoy also cannot state any claim based on fraud under

17   California Civil Code § 1709, the CLRA, or the UCL.  These claims are grounded in allegations

18   of deception, but McCoy cannot credibly allege that he was deceived into believing that Google

19   would not collect third-party-app usage data when Google's Privacy Policy expressly discloses

20   that Google may collect this information and the device set-up process expressly seeks a user's

21   consent to do so.  Likewise, Google's disclosures defeat McCoy's claims for breach of contract,

22   breach of implied contract, and unjust enrichment because these claims are all predicated on

23   Google's purported failure to disclose its collection of third-party-app usage data.  Finally,

24   because consent defeats all of McCoy's other claims, it defeats his derivative claim for

25   declaratory judgment as well.

26             In sum, the entire Complaint should be dismissed with prejudice given the disclosures that

27   McCoy's own allegations highlight.  But even if the Complaint was not so fatally flawed, its

28   claims would fail under Rule 12(b)(6) for the additional, independent reasons set forth below.

1

2

C.      **McCoy fails to state a claim for invasion of privacy under the California Constitution.**

3

"The California Constitution sets a 'high bar' for establishing an invasion of privacy

4      claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).  To clear this bar,

5      McCoy must plead: (1) a legally protected privacy interest; (2) a reasonable expectation of

6      privacy in the circumstances; and (3) a serious invasion of privacy constituting "an *egregious*

7      breach of . . . social norms."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994).

8      Ensuring that a plaintiff pleads these "threshold elements" allows courts to "weed out" claims that

9      do not significantly intrude upon "a constitutionally protected privacy interest."  *Loder v. City of*

10     *Glendale*, 14 Cal. 4th 846, 893 (1997).  McCoy does not clear this threshold.

11              ***First***, McCoy fails to allege a "legally protected privacy interest."  *Pioneer Elecs. (USA),*

12     *Inc. v. Superior Ct.*, 40 Cal. 4th 360, 370 (2007).  He states neither an informational interest—

13     which pertains to "the dissemination or misuse of sensitive and confidential information" that, if

14     disclosed, could cause "unjustified embarrassment or indignity"; nor an autonomy interest—

15     which shields "intimate personal decisions" from "observation" or "intrusion."  *Id.*

16              Unlike situations in which courts have found a protected privacy interest, McCoy does not

17     allege what extremely sensitive information Google misused or collected, such as by conducting

18     unauthorized tests on blood samples (*Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 711-12 (9th Cir.

19     2005)); interrogating a middle-school student about her sexual orientation, virginity, and sexual

20     practices (*Botello v. Morgan Hill Unified Sch. Dist.*, No. C09-02121 HRL, 2009 WL 3918930, at

21     *5 (N.D. Cal. Nov. 18, 2009)); accessing and using a sexual-battery victim's confidential mental

22     health records (*Susan S. v. Israels*, 55 Cal. App. 4th 1290, 1294 (1997)); or disseminating a

23     patient's positive HIV test results (*Urbaniak v. Newto*n, 226 Cal. App. 3d 1128, 1133 (1991)).

24     Rather, McCoy asserts only that Google collected information relating to how often he opened

25     and used TikTok on his phone.  Compl. ¶¶ 31, 40.  This information, if actually collected, is far

26     from the type of extremely sensitive personal information required to clear the constitution's

27     "high bar."  *Hill*, 7 Cal. 4th at 35–37.

28

1390411

1   Indeed, courts have routinely rejected constitutional privacy claims that failed to allege

2   what specific sensitive confidential information was accessed.  For example, in *In re Google*

3   *Location History Litigation*, the court dismissed plaintiffs' privacy claims because they had failed

4   to allege what data Google collected from plaintiffs, never mind that it was purportedly "sensitive

5   and confidential" information.  428 F. Supp. 3d 185, 199 (N.D. Cal. 2019); *see also In re Yahoo*

6   *Mail Litig.*, 7 F. Supp. 3d at 1040–42 (dismissing constitutional privacy claim because plaintiffs

7   failed to allege that the data Yahoo allegedly collected "actually included content that qualifies

8   under California law as 'confidential' or 'sensitive'").

9   **Second**, McCoy has not pleaded that, under the circumstances, he had a reasonable

10   expectation of privacy because the collection at issue was disclosed to him.  Google's Privacy

11   Policy discloses that Google may collect "[a]ctivity on third-party sites and apps," and users also

12   have a choice as to whether to share their third-party-app usage data with Google before it is

13   collected.  RJN Ex. 2A at 3; RJN Ex 1 at 4.  Having consented to the Privacy Policy and Google's

14   disclosures when setting up his device, it is implausible that McCoy could have expected his

15   basic activity information, such as how often he opened and used TikTok on his phone, to remain

16   private from Google in this particular situation.  *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at

17   1037–38 (finding that plaintiffs must conduct themselves "in a manner consistent with an actual

18   expectation of privacy").

19   **Third**, McCoy cannot establish an egregious breach of social norms.  McCoy baldly

20   asserts that Google collected and "disseminat[ed]" his "sensitive personal data."  Compl. ¶¶ 81,

21   91-95.  He does not, however, plead any **facts** showing that any dissemination actually took place,

22   such as how, to whom, or when any alleged dissemination might have occurred.  In the absence

23   of well-pleaded facts, the Court need not accept McCoy's unsubstantiated conclusion that his

24   information was disseminated.  *See Iqbal*, 556 U.S. at 679 (concluding that pleadings that are "no

25   more than conclusions, are not entitled to the assumption of truth").

26   But even if McCoy had so alleged, his claim would fail due to the type of basic activity

27   information that he claims Google collected.  Courts have "consistently refused to characterize

28   the disclosure of common, basic digital information," like the app-usage information here, "as

serious or egregious violations of social norms." *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 985 & n.108 (N.D. Cal. 2014) (citing cases); *see also Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2017 WL 6387764, at *7-8 (N.D. Cal. Dec. 14, 2017); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

For example, in *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), the plaintiffs alleged that the defendants had systematically collected and disseminated their "unique device identifier number[s], personal data, and geolocation information from [their] iDevices," but the court dismissed those claims because the allegations did "not constitute an egregious breach of social norms." *Id.* at 1063.  And in *In re Google Inc. Privacy Policy Litigation*, the court analyzed plaintiffs' allegation that Google had collected personal information from Android users, associated it with other private user information, and then disclosed the commingled data to "third-party developers" in ways that allegedly violated "Google's own policies."  58 F. Supp. 3d at 974–75, 987.  The court nonetheless dismissed plaintiffs' privacy claim, holding that the allegations were not "sufficiently beyond the pale of social norms" to meet the standard required to plead a constitutional privacy violation.  *Id.* at 985.  The information at issue here—how often one uses third-party apps—is basic digital information; collecting it is not an "egregious breach of social norms."

Accordingly, McCoy's constitutional privacy claim should be dismissed.  As prior courts have ruled, allowing such a "conclusory and speculative pleading to survive a Rule 12(b)(6) motion to dismiss would obliterate the 'high bar' set for establishing an invasion of privacy claim."  *In re Google Location History Litig.*, 428 F. Supp. 3d at 199.

### D.     McCoy fails to state a claim for intrusion upon seclusion.

To state a claim for intrusion upon seclusion, a plaintiff must plead: (**1**) that the defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and (**2**) that the intrusion "occur[ed] in a manner highly offensive to a reasonable person."  *Hernandez*, 47 Cal. 4th 272, 286 (2009).  Where, as here, a plaintiff brings claims for both invasion of privacy under the California Constitution and the common law tort of intrusion upon seclusion, courts conduct a combined inquiry that considers

"(**1**) the nature of any intrusion upon reasonable expectations of privacy, and (**2**) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Id.* at 288. Because the "right to privacy in the California Constitution sets standards similar to the common law tort of intrusion," courts routinely dismiss these claims together. *Id.* at 287; *In re Google Location History Litig.*, 428 F. Supp. 3d at 199 (dismissing plaintiffs' constitutional and common-law privacy claims for the same reasons); *Moreno*, 2017 WL 6387764, at *8 (same); *Low*, 900 F. Supp. 2d at 1025 (same).

McCoy's intrusion-upon-seclusion claim fails for the same reasons that his constitutional-privacy claim fails. McCoy does not allege the "*exceptional* kind of prying into another's private affairs" that the law requires. *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 819 (9th Cir. 2002). Google's collection of third-party-app usage data—a collection that is disclosed to the user—is a far cry from instances where the tort might apply, such as "(**1**) taking the photograph of a woman in the hospital with a 'rare disease that arouses public curiosity' over her objection, and (**2**) using a telescope to look into someone's upstairs bedroom window for two weeks and taking 'intimate pictures' with a telescopic lens." *See id.* (citing Rest. (2d) Torts § 652B, cmt. b.). At most, Google's collection of third-party-app usage data to build and provide better services amounts to what courts consider unactionable "routine commercial behavior." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063; *see also Low*, 900 F. Supp. 2d at 1025. Accordingly, McCoy's intrusion-upon-seclusion claim should be dismissed together with his constitutional claim for invasion of privacy.

### E.     McCoy fails to state a claim under the California Invasion of Privacy Act.

As is relevant here, CIPA punishes a person who, "willfully and without the consent of all parties to the communication," attempts to read or learn "the contents or meaning of any message, report, or communication" in transit over a wire. Cal. Penal Code § 631(a). McCoy has not—and cannot—plead facts to establish any of these elements.

At the outset, McCoy's CIPA claim fails because McCoy does not allege any "**message, report, or communication**" intercepted by Google. McCoy suggests that Google "secretly monitors" app-activity data on users' phones. *See, e.g.*, Compl. ¶¶ 22–23, 30. But nowhere in the

Complaint does McCoy allege facts to explain how "monitoring" such app-activity data could constitute the interception of a "message, report, or communication" by Google.  Because CIPA "require[s] the interception of an electronic communication," McCoy's CIPA claim cannot survive.  *Bradley v. Google, Inc.*, No. C 06-05289 WHA, 2006 WL 3798134, at *6 (N.D. Cal. Dec. 22, 2006); *see also Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (construing § 631 "to apply only to eavesdropping by a third party" and affirming dismissal where allegations did not show that such a communication had occurred).

McCoy's CIPA claim also fails because McCoy does not allege the "**contents**" of any purported communications allegedly intercepted by Google, as is required under the statute.  Rather, in pleading his CIPA claim, McCoy recites just the legal elements of what the law forbids—eavesdropping on a "message, report, or communication" while it is in transit.  Compl. ¶¶ 175–77.  He then summarily concludes that "Plaintiff and the Class members did not authorize [Google] to collect the subject information." *Id.* ¶ 177.  The claim includes no factual allegations to show what the contents of this "subject information" might comprise.  Without such allegations, McCoy's CIPA claim simply cannot survive.  *See Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."); *see also Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at *6 (N.D. Cal. Aug. 30, 2019) (dismissing CIPA claim for failure "to identify the contents of any communication . . . allegedly intercepted").

Finally, even if McCoy could overcome these pleading failures, his CIPA claim would still fail because the type of usage and activity data he alleges Google collects does not amount to the "contents" of a "communication" under CIPA.  This data is—at best—unactionable "record information," which prior courts have found can encompass "user names, passwords, and geographic location information" (*Brodsky*, 2019 WL 4141936, at *6–7), as well as "information about a telephone call's origination, **length, and time**," (*In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)) (emphasis added).[5]  Viewed in this context, McCoy's third-party-app

---

[5] Although *In re Zynga Privacy Litigation* concerned a claim arising under the federal Wiretap

1   usage data is, if anything, record information and plainly not an intended message conveyed by a

2   communication.  Accordingly, McCoy's CIPA claim should be dismissed.  *See Brodsky*, 2019

3   WL 4141936, at *6 (dismissing § 631 claim alleging the interception of "login activities" because

4   "login activities" comprise only "record information," not the "contents" of an intercepted

5   "communication").

6          **F.      McCoy fails to state a claim under the California Consumer Privacy Act.**

7          McCoy's CCPA claim fails for two independent reasons.  ***First***, McCoy fails to allege

8   facts giving rise to a private right of action under the CCPA.  The statute confers a private right of

9   action "***only***" for violations of subsection (a) of § 1798.150, which pertains to data breaches.  *See*

10  Cal. Civ. Code § 1798.150(a), (c).  Specifically, § 1798.150(a) applies to a consumer whose

11  personal information was "subject to an unauthorized access and exfiltration, theft, or disclosure

12  as a result of the business's violation of the duty to implement and maintain reasonable security

13  procedures and practices."  *Id.*  The statute expressly precludes a cause of action "based on

14  violations of any other section" of the CCPA.  *Id.* § 1798.150(c).  It also prohibits a plaintiff from

15  using the CCPA "to serve as the basis for a private right of action under any other law."  *Id.*

16  Here, McCoy does not allege that his information was subject to a data breach within the meaning

17  of § 1798.150(a).  *See* Compl. ¶¶ 111-12.  Instead, he bases his claim on a different CCPA

18  subsection, § 1798.100(b), but this subsection does not provide a private right of action.  *See* Cal.

19  Civ. Code § 1798.150(c).  McCoy's claim under the CCPA therefore fails as a matter of law.

20          ***Second***, McCoy has no cause of action under the CCPA because the statute explicitly does

21  not apply to him personally.  Relief under the CCPA is available only to a "consumer," which the

22  statute defines as "a California resident."  *Compare* Cal. Civ. Code § 1798.140(g) *with id.*

23  § 1798.150(a).  Because McCoy is a resident of New York (Compl. ¶ 11), he cannot be a

24  "consumer" under the CCPA, and he therefore lacks statutory standing.

25

26

27  Act, CIPA is California's state-law analogue to the federal Wiretap Act, and courts conduct the
    same analysis under both acts.  *See Brodsky*, 2019 WL 4141936, at *6 (applying *In re Zynga* to

28  § 631 claim); *In re Google Assistant Privacy Litig.*, No. 19-cv-04286-BLF, 2020 WL 2219022, at
    *14 (N.D. Cal. May 6, 2020).

### G.      McCoy fails to state a claim for fraud.

The elements of fraud giving rise to a tort action for deceit under Civil Code § 1709 are: "(**a**) misrepresentation (false representation, concealment, or nondisclosure); (**b**) knowledge of falsity (or 'scienter'); (**c**) intent to defraud, i.e., to induce reliance; (**d**) justifiable reliance; and (**e**) resulting damage." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996); *see also* Cal. Civ. Code § 1709.  A plaintiff alleging fraud must meet Rule 9(b)'s heightened pleading standard and define with particularity the basis for his claim, including "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981).  The law requires an exacting standard "to prohibit a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). McCoy fails to overcome this pleading bar by any measure.

### 1.      McCoy does not identify any false or misleading statement made by Google, intentionally or otherwise.

McCoy's fraud claim vaguely alleges "various acts of deceit," but points to only two purported misrepresentations—namely that (**1**) Google's Privacy Policy falsely claims that Google collects data "to provide better services" and (**2**) Google falsely represents "when users set up an Android phone" that it collects data "to provide 'a more personalized experience.'" Compl. ¶ 101.  McCoy asserts that both statements are "objectively false" because the "real purpose" of Google's data collection practices is "to gain an unfair competitive edge over its competitors, such as Tik Tok, Instagram, and Facebook." *Id.* ¶ 102; *see also id.* ¶ 30 (alleging that Google collects basic third-party-app usage data to develop a competitor to TikTok called "Shorts").  Not only does McCoy fail to cite in full the materials from which he cherry-picks these statements, he also offers no specific facts to explain why these statements are "objectively false."  Nor can he.

Even if one were to accept McCoy's premise that the collection of basic-activity information about how often and for how long a user interacts with a third-party app provides

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 5:20-cv-05427-SVK

1    Google with some sort of a competitive advantage, McCoy cannot plead a claim for fraud.  As the

2    foregoing discussion of Google's terms and policies demonstrates, Google discloses that it

3    collects data for a wide range of purposes including, but not limited to, using data to "provide

4    better services," "maintain & improve our services," "develop new services," and "develop new

5    products, features and technologies that benefit our users."  RJN Ex. 2A at 2, 5–7, 17.  Thus,

6    Google discloses that, of the many reasons Google collects data, one is to develop *new* services

7    and *new* products.  *Id.* at 5.  At best, McCoy offers only "conclusory allegations of fraud . . .

8    punctuated by a handful of neutral facts," and, in such cases, the law dictates dismissal.  *Semegen*,

9    780 F.2d at 731.

10               **2.      McCoy does not adequately allege reliance and resulting damage.**

11          To state a claim for fraud under Rule 9(b), McCoy must also "plead reasonable reliance

12   on alleged misstatements with particularity by alleging facts 'of sufficient specificity,' allowing a

13   court to infer that 'misrepresentation caused injury to plaintiffs by inducing them to pay' for

14   products, or services."  *Lintz v. Bank of Am.*, N.A., No. 5:13-CV-01757-EJD, 2013 WL 5423873,

15   at *5 (N.D. Cal. Sept. 27, 2013).  But McCoy's fraud claim lacks any information regarding how

16   he relied to his detriment on either of Google's two allegedly false statements about third-party-

17   app usage data collection.  Compl. ¶¶ 99–107.

18          In particular, McCoy's fraud claim alleges no facts explaining where he first encountered

19   Google's two allegedly false statements, or whether he encountered them before he came to own

20   his Google Pixel XL, before he set up his device, or sometime after that.  These omissions are

21   fatal.  *See, e.g.*, *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 5:12-CV-6209-

22   EJD, 2014 WL 3372583, at *11 (N.D. Cal. July 9, 2014) (dismissing fraud claim where plaintiff

23   had "fail[ed] to plead reliance on [a] specific statement, or resulting damages from that reliance");

24   *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519–20 (2004) (affirming dismissal of fraud

25   claim where plaintiff failed to plead that he actually "saw" the allegedly fraudulent ads before

26   purchasing the advertised product).

27          McCoy also does not make clear what "position" Google's purportedly deceitful

28   statements caused him to alter.  Compl. ¶ 104.  Nor does he elaborate on how he "would have

17

acted differently" if he had known that Google could use his third-party-app usage data to, among other things, develop new products. *Id.* ¶ 105. The Complaint lacks any particular facts, for example, about the circumstances by which McCoy came to own his Google Pixel XL, much less if or when he himself purchased the device.[6] And the Complaint also lacks any facts explaining how McCoy set up his Google Pixel XL and whether he made any changes to the privacy controls around sharing his third-party-app usage data with Google. It is therefore impossible to evaluate reliance, the altered "position," or the resulting injury to which he is referring. As a result, McCoy falls far short of alleging facts sufficient to state a claim under Rule 8 of the Federal Rules of Civil Procedure, let alone Rule 9's requirement that he put Google on notice of the specific "who, what, when, where,  and how" of his fraud claim. *See Vess*, 317 F.3d at 1106; *see also Iqbal*, 556 U.S. at 678 (holding that a claim cannot survive if it contains only a "formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement").

## H.   McCoy fails to state a claim under the California Legal Remedies Act.

McCoy alleges that Google violated the CLRA by failing to disclose that it "secretly monitored, collected, and otherwise misused" his unspecified "sensitive personal data while using non-Google apps." Compl. ¶ 131. CLRA claims sounding in fraud—like this one—are also subject to Rule 9(b)'s heightened pleading standard. *See Kearns*, 567 F.3d at 1125. And yet, like his fraud claim, McCoy pleads his CLRA claim with little more than a verbatim recitation of the statute's elements. *See* Compl. ¶¶ 130–36.

*First*, as set forth above, McCoy has failed to identify any misrepresentation by Google with the specificity required under Rule 9(b). *See* Section V(G); *Kearns*, 567 F.3d at 1125.

*Second*, McCoy does not allege any qualifying transaction under the statute. "The CLRA applies only to a limited set of consumer transactions, and is not a law of 'general applicability.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1141 (N.D. Cal.

---

[6] *Compare* Compl. ¶¶ 134, 147, 150, 154 (asserting generally that "Plaintiff and Class" "purchased" their "Android Smartphone Devices") *with id.* ¶ 11 (pleading specifically that "McCoy is the owner of a Google Pixel XL Android smartphone," but not that he purchased it, or if he did, the circumstances of that purchase).

2018).  In particular, the statute governs when an allegedly unfair method is employed by a "**person in a transaction** intended to result or which results in the **sale or lease of goods or services** to any consumer," Cal. Civ. Code § 1770(a), and which thereby causes that person "damage," *id.* § 1780(a).  McCoy's CLRA claim, however, does not identify any specific "transaction" with Google "for the sale or lease of" a statutorily cognizable good or service, much less identify the time, place, or manner as to when such a qualifying transaction might have taken place.

*Third*, McCoy does not even identify the good or service upon which his CLRA claim is based.  His claim generically refers to "Android Smartphone devices" and McCoy elsewhere states that he "owns" a Google Pixel XL.  *See* Compl. ¶¶ 11, 19, 31, 134.  But, as discussed, McCoy nowhere alleges that he himself purchased this specific phone from Google or that Google's allegedly deceptive statements were made in the course of the transaction to induce him to purchase that device.  These deficiencies doom his claim.  *See Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (2005) (dismissing CLRA claim brought by wife because husband, not wife, engaged in transaction).

*Fourth*, if McCoy means to construe Google's Android operating system as the misrepresented "good," then he faces at least two insurmountable hurdles.  For one, the Android operating system is free for consumers, and therefore cannot meet the CLRA's "sale or lease requirement."  *See Wofford v. Apple, Inc.*, No. 11-cv-0034, 2011 WL 5445054, at *2 (S.D. Cal. Nov. 9, 2011) (holding that downloads of Apple's mobile operating system did not meet the CLRA "sale or lease" requirement because they were provided "free of charge").  For another, the CLRA does not apply to the sale or lease of software because software is not a "tangible chattel" and "does not fall within" the CLRA's statutory definition.  *Perrine v. Sega of America*, No. C 13-01962, 2013 WL 6328489, at *3 (N.D. Cal. Oct. 3, 2013); *see also Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010).

*Fifth*, McCoy also fails to allege adequately that he (**1**) suffered "damage" (**2**) "as a result of" Google's allegedly inaccurate representations.  Cal. Civ. Code. § 1780(a).  In *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009), the California Supreme Court made clear that a CLRA

19

plaintiff must plead damages in the form of a "tangible" harm.  *Id.* at 640–43.  McCoy, however, does not plead facts to explain the tangible injury that he purportedly suffered.  And because he does not identify a specific false representation allegedly made by Google or the circumstances in which he came to rely on that misrepresentation, he fails to establish any "statutory causal connection."  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002–03 (N.D. Cal. 2009); *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d at 982–83 (dismissing CLRA claim where plaintiff did not allege sufficiently that he had "see[n], read, hear[d] or consider[ed]" the terms of Google's privacy policy before creating his account).

**Sixth**, McCoy did not comply with California Civil Code § 1780(d), which requires that a CLRA plaintiff file—"concurrently with the filing of the complaint"—an "affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action."  Because McCoy does not allege or show that he filed any affidavit, dismissal is mandatory.  *See id.* ("If a plaintiff fails to file the affidavit required by this section, the court ***shall*** . . . dismiss the action without prejudice."); *see also In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (enforcing same).

## I.    McCoy fails to state a claim under California's Unfair Competition Law.

### 1.    McCoy has not established statutory standing under the UCL.

In 2004, California voters "materially curtailed the universe of those who may enforce" the UCL.  *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320–21 (2011).  For a private plaintiff to establish standing to sue under the UCL, he must plead an economic injury to his "money or property."  Cal. Bus. & Prof. Code § 17204.  "The intent of this change was to confine standing to those actually injured by a defendant's business practices."  *Kwikset*, 51 Cal. 4th at 321.  Here, McCoy alleges that he has "a property interest" in his "sensitive personal data."  Compl. ¶ 128.  But "personal information does not constitute property for purposes of a UCL claim."  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014).

Additionally, McCoy lacks standing under the UCL because he fails to satisfy the UCL's causation and reliance elements to show he was injured "as a result of" any alleged unfair

competition.  Cal. Bus. & Prof. Code § 17204.  As discussed, McCoy does not sufficiently allege

when he came to rely upon any alleged misstatement by Google, what that misstatement induced

him to do, or what injury it caused him to suffer.  Because "actual reliance" is an "essential

element" for UCL standing, this claim fails.  *See In re iPhone Application Litig.*, 6 F. Supp. 3d

1004, 1015, 1019–20 (N.D. Cal. 2013) (finding no UCL standing where plaintiffs could not

"point to specific facts indicating that [they] actually saw the misrepresentations about which they

complain, and that those misrepresentations were 'substantial factors' in [their] decisions");

*Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014) (dismissing UCL claim

for failure to plead reliance); *Baltazar v. Apple Inc.*, No. C 10-03231 WHA, 2011 WL 6747884,

at *4 (N.D. Cal. Dec. 22, 2011) (same).

### 2.  McCoy's UCL claims also fail because his predicate claims fail.

McCoy has not pleaded—and cannot plead—fraudulent, unlawful, or unfair conduct as

needed to state a UCL claim.  Compl. ¶¶ 120–29.

As an initial matter, McCoy's claim under the fraud prong should be dismissed for the

same reasons as his claim for deceit under Civil Code § 1709—McCoy has not offered a plausible

allegation that Google made an actionable misstatement.  *See Section V(G); see also In re

Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *15 (N.D. Cal.

Dec. 3, 2013) (rejecting claim under fraud prong where "documents submitted for judicial notice

undermine any notion that Google failed to disclose its [relevant] practices").

Additionally, McCoy's claim under the unlawful prong fails because each of his predicate

claims—whether for violation of privacy under the California constitution, intrusion upon

seclusion under the common law, CIPA, the CCPA, or the CLRA—also fail.  *See generally*

Section V.  As the court held in *Belton v. Comcast Cable Holdings*, conduct that is not barred by

a predicate statute is not "unlawful" under the UCL.  151 Cal. App. 4th 1224, 1234 (2007).

McCoy does not include any alleged violation of the CLRA as a basis for his UCL claim.  Compl.

¶ 121.  But Google addresses it here to avoid any doubt.  And while McCoy does include his

CCPA claim as a predicate offense, the law forbids him from doing so in this context.  *See* Cal.

Civ. Code § 1798.150(c).

Lastly, McCoy's claim under the unfair prong fails because it cannot overcome the threshold tethering or balancing tests that McCoy cites.[7]  Compl. ¶ 122.  Under the tethering test, McCoy must show that his claims are linked to violation of a "specific constitutional, statutory, or regulatory provision."  *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1051 (N.D. Cal. 2014).  But McCoy cannot do so because the predicate claims to which he "tethers" his UCL claim also fail.  McCoy cannot avoid his pleading failures on these other claims by repleading the same allegations and calling them "unfair."  *See id.* (dismissing unfair-prong claim tethered to Stored Communications Act because plaintiff failed to state a claim under that statute); *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1146 (N.D. Cal. 2013) (same re: claim tethered to CLRA).

McCoy's success on the balancing test fares no better.  In particular, McCoy must establish that Google's conduct was "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" and that the harm outweighs the utility of Google's conduct.  *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1091 (N.D. Cal. 2018).  McCoy does not come close to meeting this standard.  Google discloses that it collects information about third-party-app usage data to, among other things, provide a more customized experience, improve services, measure performance, and "develop new products, features and technologies that benefit our users and the public."  RJN Ex. 2A at 5–7, 17.  McCoy fails to establish or explain why these benefits are outweighed by any alleged injury to him when he could have easily avoided injury by choosing not to share third-party-app usage data with Google.  Where a plaintiff fails to include "allegations that go towards comparing the harm to consumers against the utility of Defendants' conduct," the UCL claim should be dismissed.  *Williamson v. McAfee, Inc.*, No. 14-cv-00158-EJD, 2014 WL 4220824, at *7 (N.D. Cal. Aug. 22, 2014).

### 3.    McCoy cannot seek damages or restitution under the UCL.

UCL plaintiffs may seek only one form of monetary relief:  restitution designed to restore to the plaintiff "any money or property" that the defendant acquired from him unlawfully.  Cal.

---

[7] *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007) (noting that the California Supreme Court expressly endorsed the tethering test and rejected the balancing test in a *competitor* action, but holding that federal courts may apply either test in *consumer* actions because California law is "in flux").

1  Bus. & Prof. Code § 17203.  McCoy does not plead facts sufficient to show that he paid Google

2  any money or gave it any specific property.  Therefore, his request for monetary relief is not

3  restitutionary.  Where, as here, a plaintiff does not "specify the source or the amount of the

4  money" that he seeks, and does not "allege any connection between the money [he] spent and

5  money in [a defendant's] possession," dismissal is appropriate.  *Phillips v. Apple Inc.*, No. 15-

6  CV-04879-LHK, 2016 WL 5846992, at *10 (N.D. Cal. Oct. 6, 2016).

7      **J.    McCoy fails to state a claim for breach of contract or breach of implied**
8          **contract.**

9          **1.    Google's contractual obligations to McCoy are not implied.**

10  Under California law, a contract can be "either express or implied."  Cal. Civ. Code

11 § 1619.  The former is "stated in words," and the latter "manifested by conduct."  *Id.* §§ 1620–21.

12 While the elements of proving a breach of contract and a breach of implied contract are the same,

13 "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where

14 there exists between the parties a valid express contract covering the same subject matter."  *Be In,*

15 *Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *5 (N.D. Cal. Oct. 9, 2013).

16 In such an instance, "the express contract controls."  *See id.*; *see also* Cal. Civ. Code § 1625.

17  McCoy recognizes that he entered into a contract with Google, whereby "both parties

18 agree[d] to abide by Google's Terms of Service."  Compl. ¶ 138.  Google's TOS is an express,

19 written, and binding instrument that sets forth the obligations and responsibilities of the parties.

20 McCoy relies on the very terms of this agreement to state both his breach-of-contract claim and

21 his ***implied*** breach-of-contract claim.  *Compare id. ¶¶* 138–45 *with id.* ¶¶ 147–57.

22  There is therefore little doubt that these two contract claims arise from the same subject

23 matter—and yet, McCoy does not plead either theory of relief in the alternative.  As a result, his

24 breach-of-implied contract claim must be dismissed.  *See O'Connor v. Uber Techs., Inc.*, 58 F.

25 Supp. 3d 989, 1001 (N.D. Cal. 2014) ("[T]here simply cannot exist a valid express contract on

26 one hand and an implied contract on the other, each embracing the identical subject but requiring

27 different results and treatment."); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

28 No. 16-MD-02752-LHK, 2017 WL 3727318, at *47 (N.D. Cal. Aug. 30, 2017) ("[C]ourts

23

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 5:20-cv-05427-SVK

1390411

1  routinely allow plaintiffs to plead both express contract and implied contract theories, **as long as**

2  **those theories are clearly pled in the alternative**.").

3                           **2.      Google did not breach any contract entered into with McCoy.**

4        Regardless of whether the Court interprets McCoy's claim as a breach of express contract

5  or breach of implied contract, both claims fail because McCoy has not alleged any actionable

6  breach.  *See* Compl. ¶¶ 138–39.  Specifically, McCoy does not allege that Google breached any

7  provision of the Terms of Service or that Google collected any information other than what it

8  properly discloses in its Privacy Policy.  Instead, McCoy alleges that Google breached the

9  provision of its Privacy Policy that states Google "collect[s] information to provide better services

10 to all our users."  Compl. ¶ 142.  McCoy contends that Google breached this provision because it

11 did not collect "information to 'provide better services,' rather it was to gain a competitive edge

12 in the market against its rivals."  *Id*.

13       McCoy's claim rests on a willful misreading of Google's Privacy Policy.  Google

14 discloses that it collects information, including third-party-app usage data, for a wide range of

15 purposes—only one of which is to provide better services.  *See* RJN Ex. 2A at 2, 5–7.  McCoy's

16 interpretation that "better services" does not encompass new services or products is implausible.

17 This interpretation especially collapses in light of the Privacy Policy's explicit statement that

18 Google may collect and use data to "develop new services" and "to develop "new products,

19 features and technologies."  *Id*.

20       In sum, McCoy's reading of the Privacy Policy is inconsistent with its plain language,

21 and—whether under an express or implied contract theory—McCoy has not established any

22 breach by Google.  Nor, as discussed above, has he alleged facts sufficient to show how any

23 alleged breach by Google caused him harm.  *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110,

24 1117 (N.D. Cal. 2011) (dismissing breach-of-contract claim where complaint failed to identify

25 "with any particularity how Facebook breached any obligation it undertook in its Statement of

26 Rights and Responsibilities").

27       **K.      McCoy fails to state a claim for unjust enrichment.**

28       As with McCoy's implied-contract claim, "unjust enrichment is an action in quasi-

1390411

contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Because McCoy recognizes that he entered into Google's Terms of Service and that its terms govern this dispute (Compl. ¶¶ 68, 138), his unjust enrichment claim is barred as a matter of law. *See Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 WL 1955643, at *27 (N.D. Cal. Apr. 23, 2020) ("[T]he mere existence of a contract that defines the parties' rights bars a claim for unjust enrichment."); *see also AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525, at *11 (N.D. Cal. July 13, 2018) (dismissing quasi-contract claim where written agreement covering same subject existed between the parties).

In addition, to establish an unjust enrichment claim, McCoy also must show that Google—by engaging in an "actionable wrong"—obtained a specific benefit at his expense. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016). But McCoy cannot do so because, as the foregoing arguments demonstrate, he has failed to allege any actionable wrong. His unjust enrichment claim should therefore be dismissed. *See Swearingen v. Healthy Beverage, LLC*, No. 13-CV-04385-EMC, 2017 WL 1650552, at *5 (N.D. Cal. May 2, 2017) (dismissing unjust enrichment claim for same reasons as UCL and CLRA claims).

### L.   McCoy fails to state a claim for declaratory judgment.

"The Declaratory Judgment Act does not provide an independent theory for recovery; if the underlying claims are dismissed, . . . then there is no basis for any declaratory relief." *Muhammad v. Conner*, No. 10-CV-1449 YGR, 2012 WL 2428937, at *3 (N.D. Cal. June 26, 2012) (citing *Hoeck v. City of Portland*, 57 F.3d 781, 787 (9th Cir. 1995)); *see also* 28 U.S.C. § 2201. Here, McCoy's request for declaratory judgment should be dismissed because each of his underlying claims fail. *See* Compl. ¶ 168 (citing other claims as bases for request for declaratory relief). The claim "may not stand alone." *Malasky v. Esposito*, No. 16-CV-04102-DMR, 2019 WL 79032, at *10 (N.D. Cal. Jan. 2, 2019), *aff'd*, 781 F. App'x 643 (9th Cir. 2019).

### VI.   CONCLUSION

McCoy's Complaint should be dismissed in its entirety. Because its failures cannot be cured by amendment, Google respectfully requests that dismissal be entered with prejudice.

1   Dated:  September 30, 2020                    KEKER, VAN NEST & PETERS LLP

2

3                                          By:   */s/ Benjamin Berkowitz*
                                                BENJAMIN BERKOWITZ
4                                               THOMAS E. GORMAN
                                                CHESSIE THACHER
5                                               CHRISTINA LEE

6                                               Attorneys for Defendant
7                                               GOOGLE LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 5:20-cv-05427-SVK

1390411