UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MCCOY, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>ALPHABET, INC. et al.,<br><br>                    Defendant. | Case No.  20-cv-05427-SVK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 24, 25, 29, 30, 33, 34 |

## I.    INTRODUCTION

Defendant Google, LLC[1] ("Defendant") moves to dismiss Plaintiff Robert McCoy's ("Plaintiff") class action Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Dkt. 24.  The Parties have consented to the jurisdiction of a magistrate judge.  Dkts. 14, 22.

The Court held a hearing on January 19, 2021.  Dkts. 40, 42.  After considering the Parties' submissions, arguments at the hearing, the case file, and relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss for the reasons discussed below.

## II.    BACKGROUND

This discussion of the background facts is based on the allegations of Plaintiff's Complaint.  Plaintiff alleges that Defendant has been using an internal program called "Android Lockbox" to monitor and collect sensitive personal data when users use non-Google applications

---

[1] Defendant Alphabet, Inc. was dismissed on September 8, 2020, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Dkt. 21.

("apps") on their Android smartphones.  Dkt. 1 ¶ 4.  Personal data collected includes when and how often the non-Google apps are used and the amount of time a user spends on the non-Google apps.  *Id.* at ¶¶ 25, 40.  Plaintiff alleges that while Defendant claims its practices are authorized, this is not the case and Defendant's Privacy Policy does not adequately disclose or seek consent to monitor, collect, or use Android smartphone user's sensitive personal data while using the non-Google apps.  *Id.* at ¶ 27.  Further, while users are told Defendant will collect personal data "to offer a more personalized experience," this is not true and Defendant uses the sensitive personal data to "obtain lucrative behind the scenes technical insight that it can use to develop competing apps against its competitors.  *Id.* at ¶ 33, 36-38.

On August 5, 2020, Plaintiff filed a class action Complaint in this action.  Dkt. 1.  Defendant filed a motion to dismiss on September 30, 2020 and the motion to dismiss hearing was held on January 19, 2021.  Dkts. 24, 40, 42.

### III.      REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Defendant asks this Court to take judicial notice of Exhibits 1, 2A-2D, 3, 4, and 5 attached to the Declaration of Christina Lee ("Lee Declaration" or "Lee Decl.").  Dkt. 25.  Defendant further argues that Exhibits 1, 2A-2D, and 3 can also be considered under the doctrine of incorporation by reference.

#### A.      Legal Standard

There are two doctrines that allow district courts to consider material outside the pleadings without converting a motion to dismiss into a motion for summary judgment: judicial notice under Federal Rule of Evidence 201 and incorporation by reference.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, — U.S. —, 139 S. Ct. 2615, 204 L. Ed. 2d 264 (2019).  "The court may judicially notice a fact that is not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if it "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)-(2).  However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja*, 899 F.3d at 999.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Incorporation by reference is a judicially created doctrine that allows a court to consider certain documents as though they are part of the complaint itself. *Khoja*, 899 F.3d at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* A defendant can seek to incorporate a document into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). While the "mere mention" of the existence of a document is insufficient to incorporate a document, it is proper to incorporate a document if the claim "necessarily depended" on them. *Khoja*, 899 F.3d at 1002.

After a defendant offers such a document, the district court can treat the document as part of the complaint, and "thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. However, "[w]hile this is generally true, it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. Indeed, using extrinsic documents to "resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery" and it is "improper to do so only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint." *Id.* at 998, 1014.

## B.   Analysis

Exhibit 1 is a copy of the article "Internal Google Program Taps Data on Rival Android Apps," which was published in *The Information*. Dkt. 25 at 2; Dkt. 25-2. Defendant asks the Court to take judicial notice of this document because it is a publicly available webpage and not subject to reasonable dispute. Dkt. 25 at 4. Defendant also argues that the Court should treat the article as incorporated by reference because Plaintiff relies and quotes from this article. *Id.* at 5. Plaintiff opposes Defendant's request, arguing that the article is not judicially noticeable because "the meaning of the specific statements that Google seeks to have judicially noticed are at the center of this dispute and subject to multiple interpretations." Dkt. 30 at 4. "It is well-established that '[c]ourts may take judicial notice of publications introduced to indicate what was in the public

1   realm at the time, not whether the contents of those articles were in fact true.'" *In re Google*

2   *Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020) (quoting *Von Saher v. Norton*

3   *Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)).  The Court therefore takes

4   judicial notice of the fact that *The Information* published allegations contained in the article, but

5   not of the truth of those allegations.  Here, Defendant is not asking the Court to treat the contents

6   of the article as true, so the Court need not reach the issue of incorporation by reference.  *See id.*

7   (reasoning that Defendants are not asking the Court to treat the news report as true and "indeed,

8   they dispute its truth").  Accordingly, the Court takes judicial notice of the article, but not of the

9   truth of the article.  The request for judicial notice of Exhibit A is **GRANTED**.

10       Defendant also asks the Court to consider Exhibits 2A-2D, which include various versions

11   of Defendant's Privacy Policy, and Exhibit 3, Defendant's Terms of Service ("TOS").  Dkts. 25 at

12   2; 25-3-25-7.  Defendant asks the Court to take judicial notice of these documents because they

13   are from publicly available webpages and not subject to reasonable dispute.  Dkt. 25 at 4.

14   Defendant also contends that the Court should treat these documents as incorporated by reference

15   because Plaintiff's "claims repeatedly cite and necessarily depend on Google's Privacy Policy and

16   TOS." Dkt. 25 at 5.  Plaintiff contends that it would be improper to incorporate by reference

17   Defendant's current version of its Privacy Policy, which was updated on August 28, 2020, after

18   this Complaint was filed.  Dkt. 30 at 8.  However, the Privacy Policy and the TOS are referenced

19   extensively throughout the Complaint and form the basis for Plaintiff's claims.  *See, e.g.*, Dkt. 1 ¶¶

20   37-40, 68, 101, 103, 138-40, 142-43, 149, 152-53, 156, and nn.2, 6-7, 8-9, 11.  Additionally,

21   Plaintiff cites to and relies on Defendant's submissions, including the current version of

22   Defendant's Privacy Policy, in Plaintiff's opposition brief.  Accordingly, Defendant's request to

23   incorporate by reference the various versions of the Privacy Policy (Dkts. 25-4-25-6) and the TOS

24   (Dkt. 25-7) is **GRANTED**.  *See in re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 813-14

25   (granting Google's request to incorporate by reference the Terms of Service and Privacy Policy).

26       Lastly, Defendant asks the Court to take judicial notice of Exhibit 4, Defendant's "Share

27   usage & diagnostics information with Google" support webpage, and Exhibit 5, Defendant's "See

28   & control your Web & App Activity."  Dkts. 25 at 2-3; 25-8-25-9.  Defendant argues that these

documents "are publicly available webpages, and not subject to reasonable dispute." Dkt. 25 at 4.

The Court takes judicial notice of these webpages for the fact that Defendant made these

statements, but not for the truth of those statements.  The request for judicial notice is

**GRANTED**.

## IV.   MOTION TO DISMISS

### A.   Legal standard

#### 1.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1).  Article III standing is a threshold requirement for

federal court jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 112 S. Ct. 2130,

119 L. Ed. 2d 351 (1992).  The party seeking standing must show that "(1) he or she has suffered

an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly

traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court

decision."  *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir.

2008) (citing *Lujan*, 504 U.S. at 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351).

A party moving to dismiss under Rule 12(b)(1) may make a facial challenge by asserting

that "the allegations contained in [the] complaint are insufficient on their face to invoke federal

jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The Court

"must accept as true all material allegations of the complaint, and must construe the complaint in

favor of the complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d

343 (1975).  "At the pleading stage, general factual allegations of injury resulting from the

defendant's conduct may suffice, for on a motion to dismiss, we presume that general allegations

embrace those specific facts that are necessary to support the claim."  *Lujan*, 504 U.S. at 561, 112

S. Ct. 2130, 119 L. Ed. 2d 351 (internal quotation marks and citation omitted).

#### 2.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim

upon which relief can be granted.  In ruling on a motion to dismiss, the court may consider only

"the complaint, materials incorporated into the complaint by reference, and matters of which the

United States District Court
Northern District of California

5

United States District Court
Northern District of California

court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citation omitted).  In deciding whether the plaintiff has stated a claim, the court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor.  *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Courts should freely give leave to amend unless the district court determines that it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, the court may dismiss without leave to amend.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### B.      Analysis

Plaintiff alleges that the issue in this case is Defendant's collection of third-party-app usage. Dkt. 1 ¶ 24.  Specifically, Plaintiff alleges Defendant collects information on "when and how often an Android Smartphone user opens and runs non-Google apps and the amount of time spent in non-Google apps."  *Id.* at ¶ 25; Dkt. 42 25:23-26:9; 35:21-22.  Further, Plaintiff alleges Defendant uses this information "to gain an unfair advantage against its competitors in other industries, including social media platforms and applications such as TikTok, Facebook, and Instagram."  Dkt. 1 ¶¶ 3, 29-30, 32, 36-38, 42; Dkt. 42 7:4-11.  From this practice, Plaintiff asserts eleven claims: (1) intrusion upon seclusion; (2) invasion of privacy; (3) violation of California Civil Code § 1709; (4) violation of the California Consumer Privacy Act; (5) violation of California Unfair Competition Law; (6) violation of the California Consumers Legal Remedies Act; (7) breach of contract; (8) breach of implied contract; (9) unjust enrichment; (10) request for

relief under the Declaratory Judgment Act; and (11) request for relief under California's Invasion of Privacy Act. Defendant asserts an overarching argument that the Complaint should be dismissed in its entirety because Defendant disclosed its data collection practices in its Privacy Policy, and Plaintiff consented to that policy. Defendant also asserts arguments as to why each claim individually should be dismissed.

### 1.    Consent

Defendant first argues that Plaintiff fails to allege an actual injury as required by the Article III standing requirements because Plaintiff consented to share his third-party-app usage data with Defendant. Dkt. 24 at 15. Defendant contends that Plaintiff acknowledges that he consented to share this data with Defendant and that Defendant disclosed how it might use that data in its Privacy Policy. *Id.* Further, Defendant argues that Defendant's disclosures and Plaintiff's consent are "an absolute defense to all claims under Rule 12(b)(6)." *Id.* at 16.

"[C]onsent is not an all-or-nothing proposition." *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). Indeed, "[c]onsent is only effective if the person alleging harm consented to 'the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent." *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 190 (citing *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072-73 (N.D. Cal. 2016)). Here, Plaintiff acknowledges that he is "subject to Google's privacy policy, which is incorporated into the contract through the TOS." Dkt. 1 ¶ 140. Therefore, the question before the Court is whether the Privacy Policy adequately discloses to users that Defendant collects their information regarding use of third-party-apps and then uses that information to its competitive advantage such that users could fairly be said to have "consented" to these disclosures. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 823. The Court considers this question objectively from "the perspective of a reasonable . . . user." *Id.* (quoting *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019)).

The Privacy Policy that was in place at the time the Complaint was filed (Dkt. 25-5) and ////

7

the most recently updated Privacy Policy (Dkt. 25-3)[2] have several provisions that address

Defendant's collection and use of information:

> **We want you to understand the types of information we collect as you use our services**
>
> We collect information to provide better services to all our users – from figuring out basic stuff like which language you speak, to more complex things like which ads you'll find most useful, the people who matter most to you online, or which YouTube videos you might like. The information Google collects, and how that information is used, depends on how you use our services and how you manage your privacy controls.
>
> ….
>
> **Information we collect as you use our services**
> **Your apps, browsers & devices**
>
> We collect information about the apps, browsers, and devices you use to access Google services, which helps us provide features like automatic product updates and dimming your screen if your battery runs low.
>
> ….
>
> **Your activity**
>
> We collect information about your activity in our services, which we use to do things like recommend a YouTube video you might like. The activity information we collect may include…
>
> • Activity on third-party sites and apps that use our services
>
> ….
>
> **We use data to build better services**
>
> ….
>
> **Develop new services**
>
> We use the information we collect in existing services to help us develop new ones.   For example, understanding how people organized their photos in Picasa, Google's first photos app, helped us design and launch Google Photos.
>
> ….

////

---

[2] Both of which the Court has incorporated by reference, *see supra* Section III.B.

**Categories of personal information we collect**

….

[I]nformation about the interaction of your apps, browsers, and devices with our services (like IP address, crash reports, and system activity); and activity on third-party sites and apps that use our services.

….

**Business purposes for which information may be used or disclosed**

….

**Research and development:** Google uses information to improve our services and to develop new products, features and technologies that benefit our users and the public.  For example, we use publicly available information to help train Google's language models and build features like Google Translate.

Dkts. 25-5 at 3-4, 6, 17, 18; 25-3 at 3-4, 6, 17, 18.

Defendant argues that from these statements "a reasonable person would understand that Google collects third-party-app usage data for a wide range of purposes, including the development of new products and services."  Dkt. 24 at 16.

On the other hand, Plaintiff contends that the language is vague, using only general terms about the information Defendant may collect and how it may use that information.  Dkt. 29 at 9, 28-29.  Thus, Plaintiff argues, the language "could not be construed by a reasonable person to cover the conduct alleged in the Complaint" and therefore "Plaintiff and other Android users could not have consented to Google's misconduct."  *Id.* at 9, 29.  By way of example, in its opposition and at the hearing, Plaintiff argued that the Privacy Policy statement, "we collect information about  your activity in our services, which we use to do things like recommend a YouTube video you might like" would not be interpreted by a reasonable person to mean that Defendant collects data about third-party apps that are not associated with Google.  *Id.* at 27.  Similarly, Plaintiff points to "activity on third-party sites and apps that use our services" as suggesting a limited range of collecting, such as of data from Google's own apps or apps that use Google's services.  *Id.* at 28-29.  As to how Defendant uses the information it collects, Plaintiff argues that in addition to generally vague, indeterminate language, the Privacy Policy sets forth misleading examples of

9

1   using collected data for the development of Google Photos and Google Translate.  *Id.* at 29.

2   Plaintiff also argues that in support of disclosure, Defendant pieces together different parts of the

3   Privacy Policy that are separated by as much as 14 pages.  *See* Dkt. 25-3 at 4-6; 25-3 at 18.

4   　　　"Defendants have the burden to establish the existence of consent."  *See In re Google*

5   *Assistant Privacy Litig.*, 457 F. Supp. 3d at 823.  Further, "[i]t also bears repeating that, at the

6   motion to dismiss stage, the Court must give Plaintiffs the benefit of all reasonable inferences."

7   *Id.*   In *Smith v. Facebook, Inc.*, the court reviewed Facebook's policies and found adequate

8   disclosure and consent in that Facebook "discloses the precise conduct at issue in this case."  262

9   F. Supp. 3d 943, 954 (N.D. Cal. 2017).  The court also noted, regarding the term "information"

10   that, "a contractual term is not ambiguous just because it is broad."  *Id.*   The Ninth Circuit,

11   affirming the district court's dismissal, concluded that the Terms and Policies, which stated that

12   Facebook "collect[s] information when you visit or use third party websites and apps that use our

13   Services" and "we use all of the information we have about you to show you relevant ads" was

14   "[k]nowing authorization" and constituted consent.  *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9

15   (9th Cir. 2018) (emphasis added).  Significantly, the Court found that, "A reasonable person

16   viewing those disclosures would understand that Facebook maintains the practices of (a)

17   collecting its users' data from third-party sites and (b) later using the data for advertising

18   purposes."  *Id.* (emphasis added).

19   　　　The Privacy Policy in this case does not present the *Smith* level of specificity in support of

20   a motion to dismiss.  "[A]ctivity on third-party sites and apps that use our services" may not be

21   understood by a reasonable user to include data from apps that are not associated with Defendant's

22   services.  Dkts. 25-5 at 4; 25-3 at 4.  Further, examples of how the collected data is used may lead

23   the reasonable user to conclude that the data is collected to enhance her personal experience, such

24   as automatic product updates and dimming one's screen when the battery is low, or recommending

25   a YouTube video the user may like.  Dkts. 25-5 at 3-4; 25-3 at 4.  To the extent data is collected

26   for the development of new products, the examples point again to collection of data from

27   Defendant's app or from public information.  For instance, the Privacy Policy states that

28   Defendant observed "how people organized their photos in Picasa, Google's first photos app" to

United States District Court
Northern District of California

1  "design and launch Google Photos" and used "publicly available information to help train

2  Google's language models and build features like Google Translate."  Dkts. 25-5 at 6, 18; 25-3 at

3  6, 18 (emphases added).  These statements may not be understood by a reasonable user to disclose

4  collection of her usage information on an independent third-party app.  Disclosure and acceptance

5  of statements for a different purpose is not sufficient to establish explicit consent to the collection

6  of information regarding use of third-party-apps for the purposes of using that information to

7  Defendant's competitive advantage.  *In re Google Inc.*, 2013 WL 5423918, at *13 (finding that

8  users' acceptance of statements in Google's TOS "does not establish explicit consent" because it

9  was "under a different set of circumstances for a different purpose" and "consent to one [process]

10  does not equate to consent to the other").

11      If "the contract language at issue is reasonably susceptible to more than one interpretation,

12  with one of those interpretations suggesting consent and another belying it, the Court cannot

13  decide the consent issue in [Defendant's] favor at the motion to dismiss stage."  *In re Facebook,*

14  *Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 789.  At the motion to dismiss

15  stage, the Court is not prepared to rule that the Privacy Policy establishes an absolute bar to

16  Plaintiff's claims.  Thus, the Court finds that Plaintiff has adequately alleged that he has standing

17  under Article III of the United States Constitution, and consent is not an absolute defense to all

18  claims under Rule 12(b)(6).  Accordingly, Defendant's motion to dismiss pursuant to Rule

19  12(b)(1) is **DENIED**.

20              **2.      Constitutional and Common-Law Privacy Claims**

21      Plaintiff alleges that Defendant violated his right to privacy under Article I, Section I of the

22  California Constitution and the common law intrusion upon seclusion.  Dkt. 1 ¶¶ 74-97.  The

23  Court treats these claims together because the common law and constitutional sources of privacy

24  protection under California law are closely related.  *See In re Google Assistant Privacy Litig.*, 457

25  F. Supp. 3d at 828-29; *In re Google Location History Litig.*, 428 F. Supp. 3d at 196.

26      "The California Constitution creates a privacy right that protects individuals' privacy from

27  intrusion by private parties."  *In re Google Location History Litigation*, 428 F. Supp. 3d at 196.

28  To allege a violation of California's constitutional right to privacy, a plaintiff must allege "(1) a

United States District Court
Northern District of California

1  legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances;

2  and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy

3  interest."  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) (citing *Hill v.*

4  *Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994)).

5  The California Supreme Court has explained that "[l]egally recognized privacy interests are

6  generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and

7  confidential information ("informational privacy"); and (2) interests in making intimate personal

8  decisions or conducting personal activities without observation, intrusion, or interference

9  ("autonomy privacy")."  *Hill*, 7 Cal. 4th at 35, 26 Cal. Rptr. 2d 834, 865 P.2d 633.  Further,

10 "[a]ctionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or

11 potential impact to constitute an egregious breach of the social norms underlying the privacy

12 right."  *Id.* at 37.

13        "To state a claim for intrusion upon seclusion, a plaintiff must allege (1) intrusion into a

14 private place, conversation or matter (2) in a manner highly offensive to a reasonable person."  *In*

15 *re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 829 (citing *Shulman v. Group W Prods.,*

16 *Inc.*, 18 Cal. 4th 200, 231, 74 Cal. Rptr. 2d 843, 955 P.2d 469 (1998)).  "This district sets a high

17 bar for the requisite intrusion that is highly offensive to a reasonable person." *In re Google, Inc.*

18 *Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (internal quotation marks and

19 citation omitted).

20        Defendant contends that Plaintiff fails to allege a "legally protected privacy interest."  Dkt.

21 24 at 19. Defendant also argues that Plaintiff has not pleaded that he had a reasonable expectation

22 of privacy because the collection at issue was disclosed to him.  *Id.* at 20.  Further, Defendant

23 argues Plaintiff "cannot establish an egregious breach of social norms" because there are no facts

24 showing that any dissemination of Plaintiff's sensitive personal data took place and because of the

25 type of "basic activity information" that Plaintiff alleges Defendant collected.  *Id.*  Plaintiff argues

26 that Defendant's Privacy Policy "is silent as to the existence of Android Lockbox and its

27 collection of sensitive personal data, including from third-party (*i.e.*, non-Google) apps."  Dkt. 29

28 at 10.  Plaintiff further argues that the "secretive nature" of Defendant's conduct and disregard for

user's privacy are sufficient to plead that this conduct is "highly offensive." *Id.* at 11.

As discussed above, *see supra* IV.B.1, a factual issue remains regarding the scope of Plaintiff's consent. While Plaintiff may have consented to the collection of activity of third-party-app usage in some instances, the scope of that consent is not clear. Thus, there may have been a reasonable expectation of privacy under the circumstances, and Defendant's argument that Plaintiff has not pleaded that he had a reasonable expectation of privacy because the collection at issue was disclosed to him is not persuasive. However, even if Plaintiff sufficiently alleges that there is a legally protected privacy interest and a reasonable expectation of privacy, "[c]ourts in this district have consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Privacy Policy Litigation*, 58 F. Supp. 3d at 985. "Many courts have found that the collection— and even disclosure to certain third parties—of personal information about the users of a technology may not constitute a sufficiently egregious breach of social norms to make out a common law or constitutional privacy claim." *In re Google Assistant Privacy Litigation*, 457 F. Supp. 3d at 830 (internal quotation marks and citation omitted). Indeed, "[t]hese courts have characterized the collection and disclosure of such data as 'routine commercial behavior.'" *Id.* (citing *Low*, 900 F. Supp. 2d at 1025). For example, in *In re iPhone Application Litigation*, the court found that the information allegedly disclosed to third parties, which included "the unique device identifier number, personal data, and geolocation information," and "app-specific information such as which functions Plaintiff performed on the app," did not constitute an egregious breach of social norms even if it was transmitted without plaintiffs' knowledge and consent. 844 F. Supp. 2d at 1050, 1063.

Here, Plaintiff alleges that Defendant collected "confidential and sensitive data," including "how long Plaintiff's [sic] and Class members' [sic] use certain apps and how often apps were open." Dkt. 1 ¶ 93. In the Complaint and at the hearing, no other types of data were alleged and the Parties agreed that this was the scope of the allegations regarding the information collected. Dkt. 42 25:23-26:9; 35:21-22. At the hearing, Defendant represented that the app activity data was not tied to any personally identifiable information, was anonymized, and was aggregated. *Id.*

13

1    at 16:1-7; 35:9-14; 35:20-22.  Given the high bar in this district, the Court finds that Plaintiff has

2    failed to adequately plead claims for invasion of privacy or intrusion upon seclusion.  The data

3    alleged to have been collected without Plaintiff's consent, the frequency and duration of use of

4    certain apps, does not rise to the requisite level of an egregious breach of social norms or intrusion

5    in a manner highly offensive to a reasonable person.  *See In re Google, Inc. Privacy Policy*

6    *Litigation*, 58 F. Supp. 3d at 985.  Accordingly, Defendant's motion to dismiss Plaintiff's

7    constitutional and common law privacy claims is **GRANTED**.

### 3.    California Civil Code § 1709 Claim

9        "The elements of a tort action for deceit under section 1709 of California Civil Code are:

10   (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of

11   falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

12   resulting damage." *Chassin Holdings Corp. v. Formula VC Ltd.*, No. 15-cv-02294-EMC, 2017

13   WL 66873, at *8 (N.D. Cal. Jan. 6, 2017) (citing *Lazar v. Superior Court*, 909 P.2d 981, 984-85

14   (Cal. 1996) (internal quotation marks omitted).  "In alleging fraud or mistake, a party must state

15   with particularity the circumstances constitution fraud or mistake.  Fed. R. Civ. Proc. 9(b).  "Rule

16   9(b) ensures that allegations of fraud are specific enough to give defendants notice of the

17   particular misconduct which is alleged to constitute the fraud charged so that they can defend

18   against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*,

19   780 F.2d 727, 731 (9th Cir. 1985) (citation omitted).  Defendant contends that Plaintiff fails to

20   meet Rule 9(b)'s heightened pleading standard and define with particularity the basis for his claim,

21   including "the time, place and specific content of the false representations as well as the identities

22   of the parties to the misrepresentation."  Dkt. 24 at 25 (citation omitted).  Defendant further

23   contends that Plaintiff fails to identify any false or misleading statements or omissions, reliance on

24   these statements, and any resulting damage.  *Id.* at 26-27; Dkt. 33 at 15-16.

25        Here, Plaintiff alleges that Defendant's Privacy Policy only partially discloses the extent of

26   the data being collected, while actually monitoring and collecting sensitive personal data to gain

27   an advantage over competitors.  Dkts. 1 ¶¶ 33, 35-38, 101-05; 29 at 15-16.  Plaintiff alleges that he

28   relied on Defendant's misrepresentations in a prompt during the setup process where Defendant

United States District Court
Northern District of California

14

said it would only collect certain data to offer "a more personalized experience."  Dkts. 1 ¶¶ 33-34; 29 at 16.  Finally, Plaintiff alleges that he would not have purchased an Android phone had he known these statements were false.  Dkts. 1 ¶¶ 101, 105, 134; 29 at 16; *see In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *35 (N.D. Cal. May 27, 2016) (noting that plaintiffs alleged that "had they been aware of the material fact, they would not have purchased their affected mobile devices") (internal quotation marks and citation omitted). Plaintiff has alleged with particularity the specific statements and actions underlying this claim. Accordingly, Defendant's motion to dismiss Plaintiff's claim for violation of Section 1709 is **DENIED**.

### 4.      California Consumer Privacy Act ("CCPA") Claim

Civil Code § 1798.150 confers a private right of action for violations of section (a), which is related to personal information security breaches.  Further, it explicitly states that "[n]othing in this title shall be interpreted to serve as the basis for a private right of action under any other law." Cal. Civ. Code § 1798.150(c).  At the hearing, Plaintiff conceded that this claim should be dismissed because there are no allegations of a security breach in this case.  Accordingly, Defendant's motion to dismiss Plaintiff's CCPA claim is **GRANTED**.

### 5.      California Unfair Competition Law ("UCL")

The UCL creates a cause of action for business practices that are: (1) unlawful; (2) unfair, or (3) fraudulent.  Cal. Bus. & Profs. Code § 17200.  Each "prong" of the UCL provides a separate and distinct theory of liability.  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  Further, to have standing to pursue this claim, plaintiffs must show that they "lost money or property" because of Defendant's conduct.  Cal. Bus. & Prof. Code § 17204; *see In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 804.

#### a.      Standing

Defendant contends that Plaintiff has failed to establish statutory standing because personal information does not constitute property for purposes of a UCL claim and Plaintiff did not sufficiently allege actual reliance.  Dkt. 24 at 29-30.  To establish standing for a UCL claim, "[a] plaintiff must show he personally lost money or property because of his own actual and reasonable

United States District Court
Northern District of California

United States District Court
Northern District of California

1   reliance on the allegedly unlawful business practices." *In re iPhone Application Litig.*, 844 F.

2   Supp. 2d at 1071 (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 330, 120 Cal. Rptr. 3d

3   741, 246 P.3d 877 (2011)).  However, there are "innumerable ways in which economic injury

4   from unfair competition may be shown." *Kwikset Corp.*, 51 Cal.4th at 323, 120 Cal.Rptr.3d 741,

5   246 P.3d 877.  For example, "[a] plaintiff may (1) surrender in a transaction more, or acquire in a

6   transaction less, than he or she otherwise would have; (2) have a present or future property interest

7   diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4)

8   be required to enter into a transaction, costing money or property, that would otherwise have been

9   unnecessary." *Id.* (citation omitted).

10      Plaintiff contends that he has alleged that he relied on Defendant's misrepresentations in

11   purchasing and using an Android smartphone "and would not have done so if he had known

12   Google would secretly monitor and collect his data from non-Google apps.  Dkt. 29 at 20.  Indeed,

13   Plaintiff has alleged that "[h]ad Plaintiff known that his information would be monitored,

14   disclosed and misused for Defendants' sole benefit, he would not have used Defendants' service."

15   Dkt. 1 ¶ 128; *see, e.g.*, *Kwikset Corp.*, 51 Cal.4th at 330, 120 Cal.Rptr.3d 741, 246 P.3d 877

16   (finding that the assertion that he or she "would not have bought the product but for" the unfair

17   business practice is sufficient to establish UCL standing).  Thus, Plaintiff has sufficiently alleged a

18   loss of money or property as a result of the UCL violation.  As Plaintiff has pleaded their UCL

19   claim under all three prongs, the Court will address in turn whether Plaintiff has sufficiently

20   alleged a claim under the UCL.

21                          **b.      Unlawful Prong**

22      "The unlawful prong of the UCL prohibits anything that can properly be called a business

23   practice and that at the same time is forbidden by law." *In re iPhone Application Litig.*, 844 F.

24   Supp. 2d at 1072 (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180,

25   83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999) (internal quotation marks omitted)).   Section 17200 of

26   the Business and Professions Code permits injured customers to "borrow" violations of other laws

27   and treat them as unfair competition that is independently actionable. *Id.*  Plaintiff alleges that

28   Defendant engaged in unlawful business practices in violation of the California common law,

California Constitution, California Civil Code § 1709, and the California Consumer Privacy Act. Dkt. 1 ¶ 121.  The Court has already considered the adequacy of Plaintiff's allegations as to the privacy rights under the California common law and California Constitution (Section IV.B.2), California Civil Code § 1709 (Section IV.B.3), and the California Consumer Privacy Act (Section IV.B.4).  Accordingly, the Court must DISMISS any claims based on violation of the California common law, California Constitution, and the California Consumer Privacy Act.  On the other hand, Plaintiff has stated a UCL claim based on California Civil Code § 1709, which the Court found to be sufficiently pleaded.  *See supra* Section IV.B.3.  Thus, Plaintiff's UCL claim survives to the extent is based upon the alleged violation of Civil Code § 1709, and Defendant's motion to dismiss is **DENIED**.

### c.  Unfair Prong

"The UCL also creates a cause of action for a business practice that is 'unfair' even if not specifically proscribed by some other law."  *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1072 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003)).  "The UCL does not define the term 'unfair.'  In fact, the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  "Before *Cel-Tech*, courts held that 'unfair' conduct occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Davis*, 691 F.3d at 1169 (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 85 Cal. Rptr. 2d 301, 316 (1999)).  The balancing test in *S. Bay Chevrolet* requires the Court to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Davis*, 691 F.3d at 1169 (internal quotation marks and citation omitted).  In *Cel-Tech*, the California Supreme Court established a more concrete definition of "unfair," defining it as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  20 Cal. 4th at 187, 83 Cal. Rptr. 2d 548, 973 P.2d

United States District Court
Northern District of California

527.  Further, "any finding of unfairness to competitors under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186-87.  While the *Cel-Tech* test did not apply to actions by consumers, "some courts in California have extended the *Cel-Tech* definition to consumer actions." *Davis*, 691 F.3d at 1170. The parties argue under both the *Cel-Tech* test and the balancing test under *S. Bay Chevrolet*.

Defendant argues that Plaintiff's claim under the unfair prong cannot overcome either the tethering or balancing test.  Specifically, Defendant argues the predicate claims to which Plaintiff "tethers" his UCL claim fails.  Dkt. 24 at 31.  Further, Defendant argues that Plaintiff fails to establish or explain why the benefits of developing new products, features, and technologies for the users and the public are outweighed by any alleged injury to Plaintiff. *Id.*  Plaintiff argues that Defendant's collection of consumer data violated California's public policy of protecting fundamental privacy rights and there is no corresponding benefit under the balancing test.  Dkt. 29 at 22.  At the motion to dismiss stage, the Court cannot say that the benefits from collecting that information to develop new products, features, and technologies for the benefit of the users and the public necessarily outweighs the harm. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 844; *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1073 ("While the benefits of Apple's conduct may ultimately outweigh the harm to consumers, this is a factual determination that cannot be made at this stage of the proceedings.").  Accordingly, Defendant's motion to dismiss on the unfair prong of the UCL is **DENIED**.

### d.    Fraudulent Prong

"In order to state a cause of action under the fraud prong of the UCL, a plaintiff must show that members of the public are likely to be deceived." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1073 (citing *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167, 93 Cal. Rptr. 2d 439 (2000)).  "The challenged conduct 'is judged by the effect it would have on a reasonable consumer.'" *Davis*, 691 F.3d at 1169 (quoting *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 72 Cal. Rptr. 3d 903, 909 (2008)).  Rule 9(b)'s heightened pleading requirements apply to UCL claims under this prong. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Thus, claims under this prong must allege "an account of the time, place,

18

1   and specific content of the false representations as well as the identities of the parties to the

2   misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation

3   marks and citation omitted).

4          Here, Plaintiff have met their burden of pleading with particularity the basis of their UCL

5   claim under the fraudulent prong.  As stated previously under Section IV.B.3., Plaintiff alleges

6   that Defendant's Privacy Policy only partially discloses the extent of the data being collected,

7   including to provide better services and to offer a more personalized experience, while actually

8   monitoring and collecting sensitive personal data to obtain information to gain an advantage over

9   competitors.  Dkts. 1 ¶¶ 33, 35-38, 101-05, 127; 29 at 21.  Further, Plaintiff has alleged that he

10  reasonably relied upon these representations and if he had "known that his information would be

11  monitored, disclosed and misused for Defendants' sole benefit, he would not have used

12  Defendants' service."  Dkts. 1 ¶ 128; 29 at 21.  At this stage, Plaintiff's allegations are sufficient

13  to state a claim.  Accordingly, Defendant's motion to dismiss on the fraudulent prong of the UCL

14  is **DENIED**.

### 6.      California Consumers Legal Remedies Act ("CLRA")

16         The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

17  practices."  Cal. Civ. Code § 1770.  To state a claim under CLRA, a plaintiff must allege: "(1) a

18  misrepresentation; (2) reliance on that misrepresentation; and (3) damages caused by that

19  misrepresentation."  *In re Sony PS3 Other OS Litigation*, 551 F. App'x 916, 920 (9th Cir. 2014).

20  "CLRA claims are governed by the 'reasonable consumer' test, under which a plaintiff must allege

21  that 'members of the public are likely to be deceived.'" *Id.* (quoting *Williams v. Gerber Prods.*

22  *Co.*, 552 F.3d 934, 938 (9th Cir.2008)).

23         Defendant first argues that Plaintiff failed to identify any misrepresentation by Defendant

24  with the specificity required under Rule 9(b).  Dkt. 24 at 27.  Further, Defendant argues that

25  Defendant fails to state a claim under the CLRA because Plaintiff failed to allege any qualifying

26  transaction under the statute.  *Id.* at 27-28.  Defendant also argues that Plaintiff fails to identify the

27  good or service upon which his CLRA claim is based and Defendant's Android operating system

28  cannot constitute a "good" under the CLRA "sale or lease requirement."  *Id.* at 28.  Defendant also

United States District Court
Northern District of California

argues that Plaintiff failed to adequately allege that he suffered damage as a result of Defendant's allegedly inaccurate representations.  *Id.* at 28-29.  Finally, Defendant contends that Plaintiff failed to comply with Civil Code § 1780(d), which requires that Plaintiff concurrently "file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action."  *Id.* at 29.

Similar to Plaintiff's section 1709 claim under Section IV.B.3, Plaintiff has alleged that Defendant's Privacy Policy only partially discloses the extent of the data being collected, while actually monitoring and collecting sensitive personal data to obtain information to gain an advantage over competitors.  Dkts. 1 ¶¶ 33, 35-38, 101-05, 132-33; 29 at 15-16, 18.  Additionally, Plaintiff alleges that he relied on Defendant's misrepresentations in a prompt during the setup process where Defendant said it would only collect certain data to offer "a more personalized experience."  Dkts. 1 ¶¶ 33-34; 29 at 16.  Plaintiff alleges that he would not have purchased an Android phone had he known these statements were false.  Dkts. 1 ¶¶ 101, 105, 134; 29 at 16, 19; *see also In re iPhone Application Litig.*, 844 F. Supp. 2d at 1071 (finding that the plaintiffs articulated a damages claim that is cognizable under the CLRA because plaintiffs alleged that they overpaid for their iDevices as a result of defendant's failure to disclose its information tracking and collection practices with respect to the free apps).  Further, Plaintiff's allegations are not premised on the Android operating system, but the sale of the Android device itself.  *See In re Google Inc. Privacy Policy Litig.*, 58 F. Supp. 3d at 981-82 ("The Android-powered device is the 'tangible chattel' that makes Google the proper target of a CLRA claim."); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1071 (finding that plaintiffs' claim "thus arises out of the sale of a good, and not the downloading of free software").

However, Civil Code § 1780(d) states that "[i]f a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice.  Plaintiff has not filed the affidavit "stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action."  Cal. Civ. Code § 1780(d).  Thus, Plaintiff does not have standing to assert a CLRA claim. *See In re Apple and AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D.

United States District Court
Northern District of California

Cal. 2011) (dismissing the CLRA claims without prejudice because they did not file the required

affidavits); *Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 WL 2792442, at *6 n.4 (N.D.

Cal. July 9, 2012) (finding that Plaintiffs' admitted failure to file the requisite certificate under

California Civil Code § 1780(d) deprives Plaintiff of standing to assert a CLRA claim); *see also*

*Rossetti v. Stearn's Products, Inc.*, CV 16-1875-GW(SSx), 2016 WL 3277295, at *2 (C.D. Cal.

June 6, 2016) ("Indeed, courts have applied the [Section 1780(d) affidavit] requirement even to

cases that were filed directly in federal court."); *but see Sandoval v. PharmaCare US, Inc.*, 145 F.

Supp. 3d 986, 999 (S.D. Cal. 2015) (finding that because the requirement is procedural, "it does

not apply to CLRA claims filed in federal court").  Accordingly, Defendant's motion to dismiss

Plaintiff's CLRA claim is **GRANTED**.

### 7.    Breach of Contract

Defendant argues that Plaintiff failed to allege breach of any provision of the TOS or that

Defendant collected any information other than what it properly disclosed in its Privacy Policy.

Dkt. 24 at 33.  Further, Defendant contends that Plaintiff has failed to allege facts sufficient to

show how any alleged breach by Defendant caused him harm.

To plead a claim for breach of contract, Plaintiff must allege: "(1) the existence of a

contract with Defendants, (2) their performance under that contract, (3) Defendants breached that

contract, and (4) they suffered damages."  *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at

831 (citation omitted).

Plaintiff adequately alleges the parties entered into a contract, agreeing to abide by

Defendant's TOS, which includes the Privacy Policy.  Dkt. 1 ¶¶ 138-40.  Further, Plaintiff alleges

that Defendant lacked consent to collect sensitive personal information to gain a competitive edge

in the market against its rivals, but did so, collecting information such as the frequency in which

Plaintiff and class members opened non-Google apps and the duration of time spent on the third-

party-apps.  Dkts. 1 ¶¶ 103, 142-43; 29 at 23.  By doing so, Plaintiff alleges that Defendant

"breached its contract with Plaintiff and Class members."  Dkt. 1 ¶¶ 143-44.  "A contract

provision will be considered ambiguous when it is capable of two or more reasonable

interpretations" and "where the language leaves doubt as to the parties' intent, the motion to

dismiss must be denied."  *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 908-09 (N.D. Cal. 2020).
As stated previously in Section IV.B.1 discussing consent, the parties have proffered varying
interpretations of the Privacy Policy.  Further, Plaintiff alleges that Defendant's breach directly
caused damages, including that Plaintiff would not have purchased an Android Smartphone
otherwise or would not have paid as high a price, his Android device is now worth less, and the
unlawful collection has resulted in a "diminution in the value of his personal information."  Dkts.
1 ¶ 145; 29 at 23; *see In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d
at 802 ("The plaintiffs can seek damages for the detriment caused by the breach.") (internal
quotation marks and citation omitted).  Accordingly, Defendant's motion to dismiss Plaintiff's
breach of contract claim is **DENIED**.

### 8.    Breach of Implied Contract

At the hearing, Plaintiff indicated that this claim was included in the alternative to the
breach of contract claim and that to the extent that the Court finds that there was an express
contract, this claim should be dismissed.  As discussed in Section IV.B.7, the Court has reasoned
that Plaintiff adequately alleges the parties entered into a contract.  Accordingly, Defendant's
motion to dismiss Plaintiff's breach of implied contract claim is **GRANTED**.

### 9.    Unjust Enrichment

Plaintiff, on behalf of himself and the class, alleges a claim against Defendant for unjust
enrichment.  Courts have determined that unjust enrichment is not a cause of action.  *See In re
iPhone Application Litig.*, 844 F. Supp. 2d at 1075; *Low*, 900 F. Supp. 2d at 1031; *Hill v. Roll Int'l
Corp.*, 195 Cal. App. 4th 1295, 1307.  Plaintiff's unjust enrichment claim does not properly state
an independent cause of action and must be dismissed.  Accordingly, Defendant's motion to
dismiss Plaintiff's unjust enrichment cause of action is **GRANTED**.

### 10.    Request for Relief under the Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its
jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations
of any interested party seeking such declaration, whether or not further relief is or could be
sought."  28 U.S.C. § 2201(a).  Defendant contends that Plaintiff's request for declaratory

United States District Court
Northern District of California

1    judgment should be dismissed because each of his underlying claims fail and this claim "may not

2    stand alone." Dkt. 24 at 34. However, as reasoned above, some of Plaintiff's underlying claims

3    have survived the motion to dismiss stage. *See Wolf v. Wells Fargo Bank, N.A.*, No. C11-01337

4    WHA, 2011 WL 4831208, at *10 (N.D. Cal. Oct. 12, 2011) ("Plaintiff's operative complaint

5    sought declaratory relief. This claim is actually a request for remedy—to weigh it, the court must

6    look to its underlying claims. Until plaintiff's claims are finally determined, it is impossible for

7    this order to say that declaratory relief will not be in order.") (citing *Boeing Co. v. Cascade Corp.*,

8    207 F.3d 1177, 1192 (9th Cir. 2000)). Accordingly, the Court **DENIES** Defendant's motion to

9    dismiss Plaintiff's declaratory relief claim.

10           **11.    California's Invasion of Privacy Act ("CIPA")**

11           Plaintiff's final claim is a request for relief under CIPA. Dkt. 1 ¶¶ 174-79. The California

12   Legislature enacted CIPA in response to "advances in science and technology [that] have led to

13   the development of new devices and techniques for the purposes of eavesdropping upon private

14   communications" and prohibits unauthorized interceptions of communications in order "to protect

15   the right of privacy." Cal. Penal Code § 630. Section 631 makes it unlawful for any person to use

16   a "machine, instrument, or contrivance" to "intentionally tap[], or make[] any unauthorized

17   connection . . . with any telegraph or telephone wire, line, cable, or instrument" or to read, attempt

18   to read, or learn the "contents or meaning of any message, report, or communication while the

19   same is in transit or passing over any wire, line or cable" without the consent of all parties to the

20   communication. "The California Supreme Court has held that § 631 protects against three distinct

21   types of harms: 'intentional wiretapping, willfully attempting to learn the contents or meaning of a

22   communication in transit over a wire, and attempting to use or communicate information obtained

23   as a result of engaging in either of the two previous activities.'" *In re Yahoo Mail Litigation*, 7 F.

24   Supp. 3d 1016, 1036 (quoting *Tavernetti v. Superior Court*, 22 Cal.3d 187, 192, 148 Cal. Rptr.

25   883, 583 P.2d 737 (1978)).

26           Defendant contends that this claim should be dismissed because Plaintiff did not allege any

27   "message, report, or communication" intercepted by Defendant and failed to allege how

28   "monitoring" app-activity data could constitute the interception of a "message, report, or

23

communication." Dkt. 24 at 22. Further, Defendant argues Plaintiff did not allege the "contents" of any purported communications allegedly intercepted by Defendant. *Id.* at 23. Finally, Defendant contends that Plaintiff's CIPA claim fails because the type of data Plaintiff alleges Defendant collects does not amount to the "contents" of a "communication" under CIPA. *Id.* Plaintiff argues that he has successfully alleged a CIPA claim "by pleading that Google used a hidden program to intercept communications between Android users and third-party apps without their consent." Dkt. 29 at 13. Plaintiff further argues that Defendant mischaracterizes what types of information qualify as "content" as opposed to "record information" or "routine commercial data." *Id.*

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (citation omitted). The Wiretap Act defines the term "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510. The Ninth Circuit has held that "record information regarding the characteristics of the message that is generated in the course of the communication" does not qualify as "contents." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also U.S. v. Reed*, 575 F.3d 900, 915-17 (9th Cir. 2009) (finding that information about a telephone call's "origination, length and time" was non-content "record" information). For example, in *Brodsky v. Apple Inc.*, the court determined that Plaintiffs could not maintain their CIPA claim predicated on "Plaintiffs' 'login activities,' or presumably Plaintiffs' user names and passwords," which constituted "record information." No. 19-CV-00712-LHK, 2019 WL 4141936, at *7 (N.D. Cal. Aug. 30, 2019) (granting defendant's motion to dismiss plaintiffs' CIPA claim).

Here, Plaintiff alleges that Defendant collected data on when and how often an Android Smartphone user opens and runs non-Google apps and the amount of time spent on the apps. Dkt. 1 ¶ 25. This alone is more akin to log in activities, and *In re Zynga* forecloses a CIPA claim predicated on this type of record information. Thus, Plaintiff has failed to allege the contents of any communication that Defendant allegedly intercepted. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's CIPA claim.

## V.     CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss pursuant to Rule 12(b)(1).  The Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss pursuant to Rule 12(b)(6).  Specifically, Defendant's motion to dismiss Plaintiff's claims for California Civil Code § 1709, UCL, breach of contract, and request for relief under the Declaratory Judgment Act are **DENIED**.  Defendant's motion to dismiss Plaintiff's claims against Defendant for violations of constitutional and common-law privacy claims, CLRA, and CIPA are **GRANTED WITH LEAVE TO AMEND**.  Defendant's motion to dismiss Plaintiff's claims against Defendant for violations of the CCPA, breach of implied contract, and unjust enrichment are **GRANTED WITHOUT LEAVE TO AMEND.**

Plaintiff may file an amended complaint by **February 16, 2021**.  Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15. Failure to cure the defects identified by this Order will be subject to dismissal with prejudice.

**SO ORDERED.**

Dated: February 2, 2021

_____
SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California